ATCHISON, T. & S. F. RY. CO. v. COGSWELL.

No. 919, Ind. T.    Opinion Filed February 2, 1909.

(99 Pac. 923.)

1.    CARRIERS—Injuries to Persons at Stations.  A railway company is bound to exercise ordinary care for the safety of a person who is upon its premises for the purposes of meeting an incoming passenger, and is liable to such person for injuries sustained on account of the railway company's failure to exercise such care.

2.    SAME—Evidence.  A person went to the depot of a railway company to meet an incoming passenger with whom he had an engagement to meet him for the purpose of continuing, after he had met him, a business negotiation between them.  **Held**, that the railway company was liable to such person for injuries received by him because of the negligence of the company in permitting its station platform to become in a dangerous condition, on account of which said person fell and was injured.

3.    JUDGMENT—Conformity to Verdict—Reduction in Amount—Right of Court.  Where the verdict in an action for damages is deemed by the court to be excessive, it may impose upon the successful party the alternative of accepting a reduced amount or of submitting to a new trial, but it has no power to render judgment for the smaller sum where the plaintiff refuses to remit and objects to such action of the court, and such action on the part of the court is error as to both parties.

(Syllabus by the Court.)

*Error from the United States Court for the Northern District of the Indian Territory; Joseph A. Gill, Judge.*

Action by Jud Cogswell against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brought error to the United States Court of Appeals in the Indian Territory, and plaintiff filed a cross-bill, and the cause was from that court transferred to the Supreme Court of Oklahoma under the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267). Reversed.

This action was brought by Jud Cogswell, plaintiff, against the Atchison, Topeka & Santa Fe Railway Company, defendant, in the United States District Court for the Northern District of the Indian Territory at Bartlesville, for damages sustained on account of personal injuries by him received at defendant's station platform in the town of Bartlesville, caused by the alleged negligence of the railway company. The negligence alleged by plaintiff on account of which he seeks to recover his damages is as follows:

"That on or about the 28th day of December, A. D. 1906, said defendant, disregarding its duties, negligently and carelessly permitted the said platform at said station or depot house to be in improper and dangerous condition, and to be and remain in an unsafe and dangerous condition, and said station and platform were by defendant negligently and carelessly operated, kept, and maintained, in that said defendant suffered, allowed, and permitted a large hole to be in said platform of said station, which was by defendant negligently and carelessly covered by a loose and unnailed board, and that on said date the plaintiff while lawfully, rightfully, and necessarily walking along and over said platform, for the purpose of meeting a friend whom he expected on an incoming train, did, between the hours of 8 and 9 o'clock in the evening of said day, step and fall into and through said hole; that in order for the plaintiff to enter said station, or to meet said train it was necessary for him to pass over said platform wherein was said defective portion and hole; that the said platform was not lighted, and on said evening was dark, and that said unsafe and dangerous condition of said platform was well known to said defendant."

He alleged that, solely by reason of said negligence of defendant in permitting said hole and loose board to remain as alleged, he was precipitated into and through the hole in the platform,

and his leg was seriously and permanently injured. Defendant in its answer specifically denies all the allegations of the petition. The case was tried to a jury, who returned a verdict for plaintiff, and assessed his damages at $1,600. On motion for a new trial the court required the plaintiff to elect to accept a judgment for $1,-000 in lieu of the amount fixed by the jury, which plaintiff declined to do. The court then remitted $600 upon his own motion from the amount fixed by the jury, and rendered judgment in favor of plaintiff for $1,000. From this judgment defendant appealed to the United States Court of Appeals of the Indian Territory, and plaintiff has filed his cross-appeal, complaining of the court's action in reducing the judgment. The case is now before this court for final disposition under the provisions of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267).

*J. R. Cottingham, Charles H. Woods,* and *Geo. M. Green,* for plaintiff in error.

*Montgomery & O'Meara* and *Jno. H. Burford,* for defendant in error.

No copies of briefs reached the reporter.

Hayes, J. (after stating the facts as above). Plaintiff in error has made 27 assignments of error in its petition, but all may be considered under two propositions. The issues of fact, including the alleged acts of negligence on the part of the railway company, were found by the jury in favor of defendant in error.

The first proposition to be determined is whether the facts found constitute in law negligence in the railway company as against defendant in error. Defendant in error on the 28th day of December, 1906, went, after night, to defendant's depot in Bartlesville to meet a passenger by the name of Crane, whom defendant in error expected on one of the incoming passenger trains of the railway company, due to arrive from Coffeyville at about the hour plaintiff went to the depot. Crane lived in Bartlesville, and had gone to Coffeyille on the preceding day, and was to return to Coffeyville on the next day thereafter. A deal concerning a barber shop was pending between Crane and defendant in

error.   Defendant in error had agreed to meet Crane.   The night was dark, and as plaintiff stepped upon defendant's depot platform, which he did just as the train arrived, his foot passed through a hole in the platform, and he fell and fractured one of the bones of his leg and inflicted other injuries.   It is conceded that plaintiff had no other business at the depot than to meet the passenger, Crane, and that his purpose in meeting Crane was that he had agreed to meet him, and that they were to continue the negotiations pending between them relative to the barber shop.

The railway company contends that plaintiff, under these facts, was at its depot and upon its premises as a licensee, and that it owed him no duty except not to willfully or wantonly injure him.   On the other hand, it is contended by plaintiff that he was at the depot for the purpose of meeting an incoming passenger, and that, although his principal purpose in meeting the passenger, Crane, was to revive the business negotiation pending between them, he was there under the implied invitation of the railway company, and that it owed him ordinary care in the construction and maintenance of its depot and platforms to avoid injuring him.

A person who does not go upon the premises of a railway company as a passenger, servant, trespasser, or as one standing in any contractual relation to the corporation, but who is permitted by the company to come upon its premises for his own interest, convenience, or benefit, is upon the premises of such railway company as a licensee, and the railway company is liable only for willful or wanton injuries which may be done to such licensee by the gross negligence of its agents or employes.   *Woolwine's Adm'r v. Ches. & O. Ry. Co.*, 36 W. Va. 329, 15 S. E. 81, 16 L. R. A. 271, 32 Am. St. Rep. 859; *Sweeny v. Old Colony, etc., Ry. Co.* (Mass.) 10 Allen, 368, 87 Am. Dec. 644; *Pittsburg, F. W. & C. Ry. Co. v. Bingham, Adm'x*, 29 Ohio St. 364; *Burbank v. Illinois Central Ry. Co.*, 42 La. Ann. 1156, 8 South. 580, 11 L. R. A. 720; Elliott on Railroads (2d Ed.) vol. 3, par. 1251.   On the other hand, one who goes upon the premises of a railway company to

transact business with it or its agents or to transact business in the operation of the road or who is there by invitation of the company, express or implied, is lawfully there, and the railway company owes him a duty of using ordinary care in the construction and maintenance of its depot and platforms to avoid injuring him. *Bennett v. L. & N. Ry. Co.*, 102 U. S. 577, 26 L. Ed. 235. One who goes with the permission and acquiescense of the owner upon the premises of another solely for his own pleasure and benefit goes as a licensee. *Benson v. Baltimore Traction Company*, 77 Md. 535, 26 Atl. 973, 20 L. R. A. 714, 39 Am. St. Rep. 436; 3 Elliott on Railroads (2d Ed.) par. 1248. But one who goes upon the premises of another in a common interest or to a mutual advantage is there under the implied invitation of the owner.

The test as to whether there is an implied invitation is stated by Mr. Campbell in his treatise on Negligence in the following language:

"The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it."

This language is quoted with approval in *Bennett v. L. & N. Ry. Co., supra;* but the court in that case does not, and we do not here, undertake to say that this principle furnishes an invariable test by which it may be determined in every case whether a person is upon the premises of another under an implied invitation. The courts have not, to our knowledge, fixed any general rule by which such test may be made, and whether an invitation exists in any case must be determined by the circumstances surrounding the case. But, where the facts of any case bring it within the language of the first sentence of the above quotation, an invitation is implied. It now seems to be the doctrine of the various state courts of the Union that one who goes to the premises of a railway company to meet an incoming passenger or to accompany a departing passenger is within this rule, and goes upon the premises of the railway company under an implied invitation of the company. 3 Elliott on Rail-

roads (2d Ed.) par. 1256; *Tobin v. Portland, etc., R. R. Co.,* 59
Me. 183, 8 Am. Rep. 415; *McKone v. Michigan Central Ry. Co.,*
51 Mich. 601, 17 N. W. 74, 47 Am. Rep 596; *Doss v. M., K. &
E. Ry. Co.,* 59 Mo. 27, 21 Am. Rep. 371; *L. & N. Ry. Co. v. Ber-
ry,* 88 Ky. 222, 10 S. W. 472, 21 Am. St. Rep. 329; *D. & R. G.
Ry. Co. v. Spencer,* 27 Colo. 313; 61 Pac. 606, 51 L. R. A. 121;
*Izler v. Manchester & Augusta R. R. Co.,* 57 S. C. 332, 35 S. E.
583; *Montgomery & Eufaula Ry. Co. v. Thompson,* 77 Ala. 448;
54 Am. Rep. 72; *Sullivan v. Vicksburg, etc., Ry. Co.,* 39 La. Ann.
800, 2 South. 586, 4 Am. St. Rep. 239; *New York, Chicago & St.
Louis Ry. Co. v. Mushrush,* 11 Ind. App. 192, 37 N. E. 954, 38
N. E. 871; *Hamilton v. Texas & Pacific Ry. Co.,* 64 Tex. 251,
53 Am. Rep. 756; *Atlantic & Birmingham Ry. Co., v. Owens,*
123 Ga. 393, 51 S. E. 404.

In the last case cited the court said:

"A railway company owes a duty to keep its passenger sta-
tion in a safe condition, not only to those who come there for the
purpose of embarking upon trains, or those who use the station
in alighting from trains, but also to those who may accompany
others about to become passengers, or who resort there for the pur-
pose of meeting incoming passengers. The company owes to one
who goes to its station for the purpose of meeting an incoming
passenger the same duty, in regard to the station and the conduct
of its employes thereat, as it does to any person going there for the
purpose of transacting business with an agent of the company.
While such a person is not a passenger, the company owes to him
ordinary care for his safety, and will be liable to him if he is in-
jured as a result of ordinary neglect on the part of the agent or
servants of the company."

One of the cases most frequently cited by the courts in sup-
port of this doctrine is *Gillis v. Pennsylvania Railroad Co.,* 59 Pa.
129, 98 Am. Dec. 317. In that case a multitude of people had
gathered upon the platform of the railroad company's depot at
Johnstown, Pa., for the purpose of seeing and hearing President
Johnson, who was a passenger upon a special train of said com-
pany. The platform, which extended over a canal, gave way un-
der the weight of the multitude gathered upon it, and fell. Many

of the persons who were upon the platform were precipitated into the chasm and seriously injured or killed. The court held the railway company was not responsible to the persons injured who came through curiosity or for the purpose of their own pleasure and without business with the road, but, as to the persons who came to meet or part with passengers, the right of recovery existed. Mr. Justice Sharswood, who delivered the opinion of the court, said:

"Had it been the hour for the arrival or departure of a train, and he (the plaintiff) had gone there to welcome a coming or speed a parting guest, it might very well be contended that he was there by the authority of defendants as much as if he was actually a passenger, and it would then matter not how unusual might have been the crowd—the defendants would have been responsible. As to all such persons to whom they stood in such a relation as required care on their part, they were bound to have the structure strong enough to bear all who could stand on it. As to all others they were liable only for wanton or intentional injury."

The general practice of the members of the public of accompanying departing friends and acquaintances to the stations of railway companies upon whose passenger trains such friends and acquaintances are to depart, and of meeting and receiving at said places friends and acquaintances who are passengers on incoming trains, is one in which the railway company has an interest in common with the members of the public who go to its stations for such purposes. One who travels upon passenger trains must go to the places provided by the railway company for receiving him and for beginning his journey, and he has a right to have some one carry or accompany him to such places, and one who rides upon the passenger trains of a railway company, must, in order to reach his ultimate destination, depart from the train and from the premises of the railway company, and such person has a right to have some one meet him and accompany him in his departure therefrom. In many instances, without such right, persons would be unable to travel upon passenger trains or to do so only with great inconvenience. It is true the facts in the case at bar do not make it such a case, but the prin-

ciple is illustrated by such instances. The right of a person who, travels upon passenger trains to have his friends and acquaintances accompany him in departing to the station of the railway company, or to meet and receive him at such place upon his coming, adds to the convenience and pleasure of traveling upon the company's railroad, and tends to lessen its inconveniences and burdens, and thereby tends to encourage travel, in all of which the railway company has an interest. Its interest in having passengers met at its stations by their friends and acquaintances is one in common with the interest of the persons who meet such a passenger, and we do not think that the reason of the rule requires it to be narrowly confined only to those persons who go to meet an incoming passenger purely for social pleasure or from the promptings of friendship or kinship; and the fact that one who meets an incoming passenger, acquaintance, or friend is prompted by the motive of ultimately consummating a business transaction, which may result profitably to him or both to him and the passenger, does not take him without the rule.

In *Tobin v. Portland, etc., Ry. Co., supra,* the person who was injured conveyed a passenger to the railway company's depot and received an injury while aiding the passenger to alight upon the platform of the company. He was there solely in his own business and profit. The court in that case said:

"The hackman, conveying passengers to a railroad depot for transportation, and aiding them to alight upon the platform of the corporation, is as rightfully upon the same as the passengers alighting. It would be absurd to protect the one from the consequences of corporate negligence and not the other. The hackman is there in the course of his business; but it is a business important to and for the convenience and profit of the defendants."

*Klugherz v. Chicago, M. & St. P. Ry. Co.,* 90 Minn. 17, 95 N. W. 586, 101 Am. St. Rep. 384, is a case in which the facts are very similar to the facts in the case at bar. In that case a boy 14 years of age went to the depot grounds of the company for the purpose of meeting for business consultation a person whom he had reason to believe was to take a train. The court held

that there is no reasonable distinction between the right of a person visiting the premises for the pupose of accompanying another to the departing train and the rights of one who goes there for the purpose of talking with a departing passenger on a business matter. The boy had gone to the station about an hour before the time for the train to depart, and had received his injuries while awaiting for the arrival of the expected departing friend and of the train. The court held that whether the time at which he went to the station in advance of the time for the departure of the train was negligence upon his part was a question to be determined by the jury. It is not contended in this case that plaintiff was guilty of contributory negligence. There is no contention that he was upon the company's platform an unnecessary length of time before the arrival of the train, or that he lingered upon the platform for an unnecessary length of time after its arrival. He, in fact, received the injuries just as he was approaching the depot and just as the train arrived. The company owed the plaintiff the duty of exercising ordinary care in the maintenance of depot platforms, to make them reasonably safe for his use. In the discharge of this duty the jury has found the company was negligent, and there is evidence to support the verdict.

In its motion for a new trial, some of the grounds assigned by plaintiff in error were: "Because said verdict is for excessive damages appearing to have been given under the influence of passion and prejudice"; "because the verdict is not sustained by sufficient evidence"; and "because it is contrary to the evidence." The court upon hearing the motion required the plaintiff to accept a judgment for $1,000 in lieu of the amount fixed by the jury, which plaintiff declined to do. The court thereupon remitted $600 from the amount fixed by the jury, overruled plaintiff in error's motion for a new trial, and rendered judgment for the sum of $1,000. This act of the court is complained of by plaintiff in error in its petition and by defendant in error in his cross-appeal, and was error as to both. The Code in force in the Indian Territory at the time of the trial in this case

provided that the court may vacate and set aside the verdict of a jury and grant a new trial upon several grounds, among which are the following: "Excessive damages appearing to have been given under the influence of passion or prejudice"; "the verdict or decision is not sustained by sufficient evidence, or is contrary to law." Section 5151, Mansfield's Dig. Ark. As was said by the court in *Kennon v. Gilmer*, 131 U. S. 22, 9 Sup. Ct. 696, 33 L. Ed. 110, under this statute, as at common law, the court upon the hearing of a motion for a new trial may in the exercise of its judicial discretion grant or deny a motion for a new trial, or make order that a new trial be granted unless the plaintiff elects to remit the excessive part of the verdict, and, if he does remit, that judgment be entered for the amount of the verdict less the amount remitted. See, also, *Little Rock & Ft. Smith Ry. Co. v. Barker et al.*, 39 Ark. 491; *Northern Pacific Ry. Co. v. Herbert*, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; *Railway Co. v. Turley*, 1 Ind. Ter. 283, 37 S. W. 52; *Blunt v. Little*, 3 Mason, 102, Fed. Cas. No. 1,578. But the trial court is without authority to reduce a verdict and render judgment for the reduced amount without the consent and over the objection of the plaintiff. *Massadillo v. Railway Co.*, 89 Tenn. 661, 15 S. W. 445; *Brown v. McLeish et al.*, 71 Iowa, 381, 32 N. W. 385; *Noel v. Dubuque, Bellevue & Mississippi Ry. Co.*, 44 Iowa, 293; *Young v. Cowden*, 98 Tenn. 577, 40 S. W. 1088. It is therefore apparent that the action of the court in rendering judgment for the reduced amount was error as to the plaintiff, for, when he refused to remit, the court was only authorized to grant a new trial.

Plaintiff in error was also prejudiced by the action of the court; for, when the court decided that the verdict of the jury was excessive, and should be reduced to the amount specified by him in his order, it was entitled to have a new trial if defendant in error refused to remit the amount required by the court, and, while in one sense, it may be said that this act of the court is in favor of plaintiff in error in that its result is to reduce the

amount of the judgment against it, it is not, however, the order plaintiff in error was entitled to.

*Kennon v. Gilmer, supra,* is an action in which the facts are somewhat similar to the facts in this case. That action arose in one of the district courts of the territory of Montana and resulted in a judgment for damages in the sum of $20,750 in favor of plaintiff. On appeal to the Supreme Court of the territory that court held the judgment to be excessive, and, without giving plaintiff an opportunity to remit, reduced the judgment of the inferior court from $20,750 to $10,750. From the judgment of the Supreme Court of the territory of Montana both plaintiff and defendant appealed to the Supreme Court of the United States, and that court, in passing upon the action of the territorial Supreme Court, said:

"The defendants were prejudiced, because, if the judgment for the lesser sum had been conditional upon a remittitur by the plaintiff, the defendants, if the plaintiff had not remitted, would have had a new trial generally; and if the plaintiff had filed a remittitur, and thereby consented to the judgment, he could not have sued out a writ of error, and the defendants would have been protected from the possibility of being obliged in any event to pay the larger sum, whereas upon the absolute judgment entered by the court without any election or consent of the plaintiff, the plaintiff had the right to sue out a writ of error; and he availed himself of that right, and docketed his writ of error in this court before the defendants docketed their writ of error. The defendants were thus put in the position of being obliged to contest the plaintiff's writ of error in order to defend themselves against being held liable for the larger sum, as the plaintiff contended that they must be upon this record."

In the case at bar, when the court entered judgment for the lesser sum, if plaintiff in error had not appealed, defendant in error had the right of appeal, and has availed himself of it by his cross-appeal herein, and plaintiff in error would have been compelled to defend against defendant in error's appeal in order to prevent being held for the larger sum on appeal, for which plaintiff now contends in his cross-appeal.

We have examined carefully the evidence in this case and

cannot say that the trial court erred in his conclusion that the verdict was excessive. The cause will be reversed and remanded with directions to grant a new trial, and that the cost in this court be taxed equally against the parties.

All the Justices concur.