## ROGERS v. CHICAGO, R. I. & P. RY. CO.

No. 1225. Opinion Filed November 18, 1911.

Rehearing Denied February 6, 1912.

(120 Pac. 1093.)

1. **RAILROADS—Injury to Person on Track—Licensee—Evidence.** In a suit against a railroad for personal injuries received by a person by being struck by a train while standing on the railroad tracks, in the switchyards, not at a crossing or depot, proof that some of the hands working at a compress about a half mile from town had occasionally used the track longitudinally, where the accident occurred, as a walkway to town, but failing to show that the railroad or any of its employees permitted or knew of such use, or that the travel there was either frequent, continuous, or had continued for more than six or seven weeks, or to such an extent as to make a pathway, or to afford other means of notice of its use by pedestrians, held not sufficient to constitute the injured person a licensee.

2. **SAME—Demurrer to Evidence.** Where all the evidence in a suit for personal injuries shows that plaintiff was standing in the center of the railroad tracks, in a switchyard, near midnight, not at any crossing or a depot, and was not there by the invitation, express or implied, of the railroad, and was injured by some train, which one not known, and where it is not shown that any servant of the railroad knew of his presence on the track, or of his position of danger, or even that he received injuries, held, that the action of the trial court in sustaining a demurrer to plaintiff's evidence was proper.

(Syllabus by Brewer, C.)

*Error from District Court, Jefferson County;*
*Frank M. Bailey, Judge.*

Action by Henry Rogers against the Chicago, Rock Island & Pacific Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

*Davis & Thompson,* for plaintiff in error.

*C. O. Blake, H. B. Low, R. J. Roberts,* and *Gilbert & Bond,* for defendant in error.

Opinion by BREWER, C. This is a suit for damages on account of personal injuries. It was filed in the district court

of Jefferson county, and was tried on January 27, 1909. At the conclusion of plaintiff's ·evidence, the defendant filed a demurrer to the evidence, on the ground "that the evidence in this case is wholly insufficient in law to establish a cause of action against defendant and in favor plaintiff." The demurrer was sustained by the court, exception saved, and the cause is here to review the action of the court in sustaining the demurrer to the evidence. This is the only question presented.

The record establishes, substantially, the following facts: The plaintiff, Henry Rogers, a colored man, was working at the construction of a compress in the town of Waurika, which was a division point on the defendant's line of railroad. The principal business part of town was west of the depot; the compress was on the east side of the railroad, about a half mile south of the depot. The only road open across the tracks between the compress and the depot was a street just south of the depot. The next street south of the depot ran down to the railroad embankment, where it terminated without crossing. E street only extended to the line of the right of way; about opposite this point there were three tracks in use—the main line on the east and two side tracks west of it. There was almost constant movement of engines and cars along this part of the road day and night, in switching back and forth. This was known to plaintiff. It was shown that the employees at the compress in going to and returning from town would cross the railroad, and sometimes would walk up the same between the tracks to the first street. On the afternoon of his injury, at night, December 14, 1907, plaintiff drew his pay, went to town, drank some whisky, and attended a colored dance until about 10:30 p. m., when plaintiff left, walked down through the business part of town, crossed over the dirt road, and climbed the railroad embankment. Soon after getting up onto the railroad, he saw a passenger train rapidly approaching on the main track, and stepped over onto the side track, where he claims he was standing, waiting for the passenger train to pass. Plaintiff does not seem to know how he received the injury he complains of, and

from the nature of his wounds, and from what he does say about it, the matter is left in confusion. He did not see or hear what hit him. The plaintiff was found with his head north; his body and feet extending south. The plaintiff was calling, and when a witness reached him all plaintiff would say was: "Get me to a fire. I am freezing." He was cursing loudly and excitedly. Did not recognize the witness and colored people who came up, and whom he knew well. The witnesses say, "I took him to be drunk." The injury did not occur at any street crossing. It was in the railroad yards.

The following excerpts from plaintiff's testimony puts his case in its strongest possible light:

"Q. What happened to you? A. Just as it passed, I started to make a step and something caught me; just as I was stepping off, it caught me. Q. Did you see the train that struck you? A. Not until it had struck me and had me down. Q. Did you hear it before it struck you? A. No, sir. Q. What was done with you? A. I was drugged, thrown down, and dragged a piece. Q. Were you dragged north or south? A. North. Q. Were you in the habit of traveling that road to the compress at eleven or twelve o'clock at night? A. No, sir. Q. Was that the first time you had ever gone that way that late at night? A. Yes, sir. Q. Did you stand on the passing track until this passenger train came along? A. Yes, sir. Q. You were stepping off and looking east, and the train struck your left side? A. Caught my foot. Q. Were you hit by an engine or caboose? A. Must have been a caboose, or something. Q. You knew that that track was used as a switch track, both night and day? A. Yes, sir. Q. Why didn't you look for the trains? A. I didn't think to look. Q. They have switch engines there all the time? A. Yes, sir. Q. You knew these engines run there day and night? A. Yes, sir. Q. Why didn't you look up and down the track to see if there was any switch engine there? A. I was watching the passenger train. Q. Why didn't you go between the tracks, so you would be safe? A. I didn't want to go near the passenger, so I stopped on the switch track. I thought once to get back off of it. Q. Then you changed your mind? A. I didn't think about it. Q. You don't know what part of the train struck you? A. No, sir. Q. You didn't get your foot under the wheels? A. I don't think I did; but I got caught by the train. Q. Can you tell the jury how? A. Something caught it. Q. This foot

was being held by the train all the time? A. Yes, sir. Q. You were being dragged by it? A. Yes, sir. Q. Can you explain to the jury why it was you did not get any scratches on the face or hands, or upon the body? A. No, sir; I do not know. Q. And you were struck by a train coming upon your left side? A. I don't know just how it struck me."

The physician testified, regarding plaintiff's injuries, in substance, as follows:

"His feet were badly swollen. The skin was scraped up to about his knees, like he had been dragged on the ground. There was a puncture on each foot just above the heel; one of them seemed to go through the foot. The puncture was on the outside of the left foot, and on the inside of the right foot. He could not tell whether the skin was scraped from the foot up, or from the knee down. These punctures in the feet were jagged injuries that you could put your little finder in. There was no broken bones. No suggestion that the cars ran over him or his foot. There were no bruises or scratches on his person above his knees."

The question in this case is whether, under the proof, the defendant is shown to have been guilty of negligence.

"In every case involving actionable negligence, there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; and (3) an injury to the plaintiff from such failure of the defendant. When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient." (*Faurot v. Oklahoma Wholesale Grocery Co.,* 21 Okla. 104, 95 Pac. 463, 17 L. R. A. (N. S.) 136; *Faris v. Hoberg,* 134 Ind. 269, 33 N. E. 1028, 39 Am. St. Rep. 261.)

The plaintiff in error claims that under the facts and circumstances of this case he was more than a mere trespasser; that he was a licensee; and that the defendant owed him the duty of exercising vigilance in discovering him on the tracks, and avoiding an injury to him. In the case of *A., T. & S. F. Ry. Co. v. Cogswell,* 23 Okla. 181, 99 Pac. 923, 20 L. R. A. (N. S.) 837, the court, by Justice Hayes, says:

"A person who does not go upon the premises of a railway company as a passenger, servant, trespasser, or as one standing in any contractual relation to the corporation, but who is permitted by the company to come upon its premises for his own interest, convenience, or benefit, is upon the premises of such railway company as a licensee, and the railway company is liable only for willful or wanton injuries which may be done to such licensee by the gross negligence of its agents or employees" —citing *Woolwine's Adm'r v. Ches. & O. Ry. Co.,* 36 W. Va. 329, 15 S. E. 81, 16 L. R. A. 271, 32 Am. St. Rep. 859; *Sweeny v. Old Colony, etc., Ry. Co.,* 10 Allen (Mass.) 368, 87 Am. Dec. 644; *Pittsburg, F. W. & C. Ry. Co. v. Bingham, Adm'x,* 29 Ohio St. 364; *Burbank v. Illinois Central Ry. Co.,* 42 La. Ann. 1156, 8 South. 580, 11 L. R. A. 720; Elliott on Railroads (2d Ed.) vol. 3, par. 1251. See, also, *Faurot v. Okla. Wholesale Grocery Co.,* 21 Okla. 104, 95 Pac. 463, 17 L. R. A. (N. S.) 136.

The doctrine announced in the above cases in this court, and the cases cited, settles the right of the plaintiff to recover, under the facts of this case, adversely to him. It is not shown by a scintilla of proof that any agent or employee of the railroad company saw plaintiff, either before or after his alleged injury, or knew that he was on the track, or that he was in a position of danger, or that he was hurt. There is no proof in the case that would tend toward establishing an inference that the railroad company or its employees might reasonably expect persons on its track at the place and time of the alleged injury. The proof in this case is insufficient, as a matter of law, to even give to the plaintiff the status of a licensee, even if that would avail him.

The fact that a number of the employees of a compress, when they went to town, during a period of six or seven weeks, sometimes walked up the tracks, with no showing of even knowledge, much less permission, on the part of the railroad, the travel being neither continuous, often, nor of long standing, no physical marks, such as a well-worn and beaten path being shown, or other circumstances that might impute or raise an inference of knowledge and permission on the part of the railroad, does not amount to a license by it to use its tracks by pedestrians.

We consider that the mere statement of the facts on this point argues it; and that to cite authorities on these facts would be useless, for in a rather careful investigation of many authorities we fail to find any decided cases where such meager proof of user by the public of railroad tracks longitudinally, and not at any public or private crossing, and not at the depot grounds, would amount in law to a license to the public to so use its tracks. We have examined the authorities cited by the learned counsel for plaintiff, but do not find them applicable under the facts of the case.

There was no evidence proving negligence in this case against the defendant; therefore nothing for the jury to pass on. The trial court was correct in sustaining a demurrer to the evidence, and the case should be affirmed.

By the Court: It is so ordered.