## MISSOURI, K. & T. R. CO. v. WOLF.

No. 9155—Opinion Filed Oct. 14, 1919.

(Syllabus by the Court.)

**1. Negligence—Elements.**

To constitute actionable negligence, where the wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff proximately resulting from such failure.

**2. Same—When Jury Question.**

Where the evidence on the primary negligence of the defendant is such that reasonable and intelligent men might differ as to the facts and inferences to be drawn therefrom, the case is one for the jury.

**3. Railroads—Negligence—Persons on Track —Care Required.**

It is a sound and wholesome rule of law, humane and conservative of human life, that, without regard to the question whether the person killed or injured in the particular case was or was not a trespasser or a bare licensee upon the track of the railway company, the company is bound to exercise special care and watchfulness at any point upon its track, where people may be expected upon the track in considerable numbers, as, where the roadbed is constantly used by pedestrians. At such places the railway company is bound to anticipate the presence of persons on the track, to keep a reasonable lookout for them, to give warning signals, such as will apprise them of the danger of an approaching train, to moderate the speed of its train so as to enable them to escape injury; and a failure of duty in this respect will make the railway company liable to any person thereby injured, subject, of course, to the qualification that his contributory negligence may bar a recovery.

**4. Same.**

Where deceased was walking along the railroad track, in broad daylight, in a well settled community, near but not on a public crossing, where, to the knowledge of the railway company, the public had been for a long time prior thereto accustomed to using the track for their own convenience as a pathway, and where the track was so situated that deceased might have been clearly visible for a considerable distance ahead of the train, the duty rested upon the railway company to use such degree of care for the safety of deceased as was commensurate with the probability that some person might be using the track as a pathway, or, differently stated, to use reasonable and ordinary care to avoid injury to persons whose presence on its premises was known, or whose presence it might reasonably have anticipated, and a failure to use such care, resulting in injury and death to deceased, will make the railway company liable therefor.

**5 Same—Licensees—Warning.**

Nor does the fact that the defendant had placed signs along its right of way, and handed out printed cards to pedestrians, warning the public against trespassing thereon, absolve it from the duty imposed by the custom of the public which had ripened into a license, where it appears that no evidence was introduced that the injured man had ever seen one of the cards, and that this custom of the public had continued unabated after the placing of said signs and the giving out of said cards.

**6. Negligence — Proximate Cause — When Jury Question.**

In a suit for personal injuries the question of whether or not defendant's negligence is the proximate cause of the injury sustained should be left to the jury where the evidence is conflicting, or where men of ordinary intelligence might differ as to the effect of the evidence on such issue.

**7. Railroads—Negligence—Persons on Track —Instructions.**

Instructions examined and found that no material or prejudicial error has been committed therein.

Error from District Court, Washington County; R. H. Hudson, Judge.

Action by Nancy J. Wolf against the Missouri, Kansas & Texas Railway Company for death by wrongful act. From judgment for plaintiff, the defendant brings error. Affirmed.

Clifford L. Jackson, W. R. Allen, and M. L. Green, for plaintiff in error.

A. O. Harrison, for defendant in error.

RAINEY, J. This action was commenced in the district court of Washington county, Oklahoma, by Nancy J. Wolf, widow of

Charles Wolf, deceased, to recover $10,000 as damages on account of the death of Charles Wolf, who was killed by being struck by one of the railroad company's trains near Bartlesville, Oklahoma, on the 26th day of April, 1915. The parties will be designated as they appeared in the trial court.

The petition states, in substance, that about 6 p. m., on or about the 26th day of April, 1915, the said Charles Wolf was walking north on one of the defendant company's railway tracks at the point where Eleventh Street crosses said track, and while on said crossing and within said highway, and while in the exercise of due care and caution for his own safety, was struck by one of defendant's northbound passenger trains and instantly killed; that the point where deceased was struck was in a populous district in the suburbs of said city, and within the yard limits of said city, and that a large number of people used said track at said point daily as a footpath, with full knowledge and consent of defendant; that on the occasion when deceased met his death, the engineer in charge of said northbound passenger train was running said train at a rapid and dangerous rate of speed, far in excess of that allowed by law and the rules of said defendant at said point; that no warning signal, either by whistle or bell, was given as provided by law for said Eleventh Street crossing; that the only warning given the deceased was by four short whistles when the train was within a few feet of him, and too late for him to escape from said track; that the deceased did not know of the approach of said train; that the track approaching said point is on an upgrade and almost straight, with no obstructions, so that deceased was in plain view of the engineer on said train, and could easily have been seen by said engineer for more than a half mile before reaching the point of said accident; that the engineer in charge of said train saw, or by the exercise of reasonable and proper diligence could have seen, the deceased in ample time to have given timely warning, and to have stopped said train and thereby avoided said accident; that the death of said Charles Wolf was due directly and proximately to the carelessness, negligence, and wanton and willful acts of said engineer, while in the due course of his employment, in driving said train at an excessive and dangerous rate of speed at said point, his failure to give the statutory signal of warning when approaching said public crossing, his failure to give deceased any warning of the approach of said train until too late for him to escape from said track,

and his failure to make any effort to stop said train until within thirty feet of the deceased, when it was too late to save the life of deceased; that deceased was a sober, industrious and hardworking man, at the time of his death earning $57 per month as wages; that he provided well for his family, spending all his wages in their behalf; that he was 63 years of age, in robust health; and that his life expectancy was twelve years.

The defendant company's answer consisted of a general denial and a plea of contributory negligence. The cause was tried to a jury, which returned a verdict for plaintiff in the sum of $3,000. Judgment was rendered accordingly, from which the railway company has appealed to this court.

Defendant, in its brief, specifies twenty assignments of error, but we think that all the questions raised on appeal may be adequately disposed of upon a determination of the following questions: (1) Did the court err in overruling defendant's demurrer to plaintiff's evidence, and in refusing to instruct the jury to return a verdict in favor of defendant? (2) Did the court err in its instructions to the jury?

It is a well-settled rule of law that to constitute actionable negligence, where the wrong is not willful and intentional, three, essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff proximately resulting from such failure. C., R. I. & P. R. Co. v. Foltz, 54 Okla. 556, 154 Pac. 519; Clinton & C. W. R. Co. v. Dunlap, 56 Okla. 755, 156 Pac. 654; C., R. I. & P. R. Co. v. Penix, 61 Oklahoma, 159 Pac. 1141; Lusk v. Wilkes, 70 Oklahoma, 172 Pac. 929.

Where the evidence is such that reasonable and intelligent men might differ as to the facts and inferences to be drawn therefrom, the case is one for the jury. Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 Pac. 120; New York Plate Glass Ins. Co. v. Katz, 51 Okla. 713, 152 Pac. 353; C., R. I. & P. R. Co. v. Felder, 56 Okla. 220, 155 Pac. 529; C., R. I. & P. R. Co. v. Schands, 57 Okla. 688, 157 Pac. 349. Taking plaintiff's evidence, together with all reasonable deductions and inferences therefrom, can it be said that reasonable and intelligent men would agree that the defendant company was not negligent under the circumstances? To answer this question we must first determine what duty, if any, the

defendant company owed the deceased under the facts of this case.

Concerning the duty which a railroad company owes to a person walking on its tracks under circumstances similar to those in the instant case, and as to whether such a person is a trespasser or a bare licensee, the different state courts are in hopeless conflict. Many cases support the view favored by Elliott on Railroads, 2nd Ed., sec. 1250, which is that a bare licensee, such as the deceased in the case at bar, takes his license subject to the "concomitant risks and perils," and occupies substantially the position of a trespasser, and that the company owes him no duty of active vigilance to discover him, but only owes him the duty of exercising ordinary care not to injure him after discovering him in a place of peril On the other hand, there are many authorities supported by sound reason which take the contrary view, which is well stated in Thompson on Negligence, 2nd Ed., sec. 1726, as follows:

"It is a sound and wholesome rule of law, humane and conservative of human life, that, without regard to the question whether the person killed or injured in the particular case was or was not a trespasser or a bare licensee upon the track of the railway company,—the company is bound to exercise special care and watchfulness at any point upon its track, where people may be expected upon the track in considerable numbers, as, for example, in a city where the population is dense, even between streets where the track has been extensively used for a long time by pedestrians, or where the roadbed is constantly used by pedestrians; or at a bridge in a thickly settled community which the public, in considerable numbers, have used for many years. At such places the railway company is bound to anticipate the presence of persons on the track, to keep a reasonable lookout for them, to give warning signals, such as will apprise them of the danger of an approaching train, to moderate the speed of its train so as to enable them to escape injury; and a failure of duty in this respect will make the railway company liable to any person thereby injured, subject, of course, to the qualification that his contributory negligence may bar a recovery."

The earlier decisions of this court, it seems, inclined somewhat toward the views expressed in Elliott on Railroads, but our later decisions have so construed and modified these earlier decisions as to make the present weight of authority in this jurisdiction substantially in accord with the above quoted views of Mr. Thompson.

In Atchison, T. & S. F. R. Co. v. Cogswell, 23 Okla. 181, 99 Pac. 923, a person went to the depot of a railroad company to meet an incoming passenger with whom he had an engagement, for the purpose of continuing their business matters after their meeting at the train. In walking across the platform the plaintiff was injured by stepping into a hole in said platform, which the defendant had negligently covered by a loose and unnailed board. The court held that under the circumstances plaintiff was an invitee, and the railway company was liable for his injuries proximately resulting from its negligence. The opinion in that case contained language which is clearly dictum. It is as follows:

"A person who does not go upon the premises of a railway company as a passenger, servant, trespasser, or as one standing in any contractual relation to the corporation, but who is permitted by the company to come upon its premises for his own interest, convenience, or benefit, is upon the premises of such railway company as a licensee, and the railway company is liable only for willful or wanton injuries which may be done to such licensee by the gross negligence of its agents or employees."

Counsel for defendant relies upon this expression to support their contention that under the circumstances of the case at bar the railway company was under no duty to exercise ordinary care to discover plaintiff in a place of danger and prevent injury to him.

In point of time, the next case upon which counsel for defendant rely, is Rogers v. C., R. I. & P. R. Co., 32 Okla. 109, 120 Pac. 1093. In that case the plaintiff, near midnight while standing on the railroad tracks, in the switchyards, not at a crossing or depot, was struck by a train and injured. It was not shown that any servant of the railroad company knew of his presence on the track, or of his position of danger, or even that he received injuries. Some evidence was introduced that some of the hands working at a compress about half a mile from town had occasionally used the track longitudinally, where the accident occurred, as a walkway to town, but there was not any evidence that the railroad company or any of its employes permitted or knew of such use. Neither was there any evidence that the track had been used by pedestrians for more than six or seven weeks, or that during said time travel was either continued or frequent or had existed to such an extent as to make a pathway, or to afford other means of notice of its use by pedestrians. Defendant demurred to the evidence. which de-

murrer was sustained. Obviously the case is not in point, since in the case at bar it is well established that the railway company did know of the custom of using the track as a walkway, and the accident occurred in broad daylight on a clear day, when the engineer, by the exercise of ordinary care, might have seen the deceased for a long distance ahead of the train, and did see him before the accident.

C., R. I. & P. R. Co. v. Stone, 34 Okla. 364, 125 Pac. 1120, is also cited. In that case plaintiff was a trespasser riding on one of defendant's trains, who was injured by reason of defendant's gross negligence in allowing certain freight cars to run down a steep decline upon the main track and collide with the train. Defendant was held liable, and the rule was announced by the court that a trespasser can recover for gross negligence on the part of a railroad company where he is guilty of no contributory negligence, as disclosed by the facts of that case. The facts being so dissimilar, that case is not very helpful in the consideration of the instant case.

In Gulf, C. & S. F. R. Co. v. Dees et al., 44 Okla. 118, 143 Pac. 852, plaintiff's intestate met the injury which resulted in his death in going across defendant's yards and climbing between the cars of a train. Plaintiff attempted to show that deceased was not a trespasser by reason of the fact that pedestrians were in the habit of crossing defendant's tracks just north of the stock pens where the old street had formerly crossed the right of way. The trial court rendered judgment on a verdict in favor of plaintiff, which was reversed. In the course of the opinion this court said:

"If the defendant had known, at the time it slightly moved its train, that the deceased was passing between its cars, and thus in a position of danger, a very different situation would be presented, involving principles of law not here involved. But this record is barren of such proof. If this had been an accident to a pedestrian at a crossing, and there had been sufficient proof that pedestrians for a long time had been crossing defendant's tracks at the place, continuously and in large numbers, and that the defendant knew of same, or that the circumstances were such as to impute knowledge, then the company would have been under the duty of looking out for persons, and of reasonably expecting them to be at such place; and the rules applying as between a carrier and a naked trespasser would be modified. But such is not this case."

It is thus clearly seen that the facts in that case were so different from those in the case at bar that a different rule of law was applicable, but the court indicates that under circumstances analogous to those presented in the instant case, a different rule would have been applied.

Defendant also cites in support of its contention the case of Midland Valley R. Co. v. Littlejohn, 44 Okla. 8, 143 Pac. 1. In that case the negligence consisted in leaving an iron flywheel, about 30 inches in diameter, and weighing about 365 pounds, on defendant's platform in such position that plaintiff, a boy four and one-half years of age, in going upon said platform to play, and attempting to climb upon said flywheel, was injured. Judgment was rendered for plaintiff, which was reversed by this court, and the case remanded for new trial upon the ground that plaintiff was a trespasser or bare licensee and should not have been allowed to recover without proof of either willfulness or wantonness on the part of defendant. Upon the second trial of the case, the court sustained a demurrer to the plaintiff's evidence, discharged the jury, and entered judgment for the defendant, and the case again came before this court in Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 Pac. 120, and was again reversed on the ground that since the standard of duty in such cases varied according to the circumstances, it must be determined by the jury where there was sufficient evidence.

The question of the duty of a railroad company to a licensee came up squarely for decision in this court for the first time in Wilhelm v. Missouri, O. & G. R. Co., 52 Okla. 317, 152 Pac. 1088. In that case the deceased, while walking along a side track, which had been used for several years by persons living in a certain vicinity as a near cut in going from the east to the west part of the town and returning, was struck and run over and killed by some freight cars, which defendant's servants had switched upon the side track upon which the deceased was walking, with no one on or in control of said cars. A demurrer to the evidence was sustained by the trial court, which ruling was reversed by this court. It was there contended by plaintiff that under such circumstances deceased was a licensee, while defendant contended that he was a trespasser pure and simple. The court held that it was the duty of the court to have submitted to the jury the usage of the public in regard to the pathway, and to have left them, under proper instructions, to determine whether under all the facts and circumstances, the deceased was a licensee, with the permission

of the railway company, express or implied, to use this track as a pathway, or was a mere trespasser. While the evidence disclosed facts which might amount to gross negligence on the part of the railway company, and in that respect the case is not on all fours with the case at bar, the facts showing deceased's relations to the defendant are practically the same as those in the case at bar, and the case is in point on the question we are now considering.

In St. L. & S. F. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60, the plaintiff was injured by being struck by a caboose, which defendant suddenly and without warning bumped against with its engine just as plaintiff was crossing the track immediately behind the caboose. There was evidence that plaintiff, who was a boy 12 years of age, together with other boys of about the same age, was accustomed to going to the place where the accident occurred to play and to gather coal at a coal chute. The evidence was conflicting as to whether the servants of defendant had warned the boys to stay away. On the afternoon of the accident plaintiff testified he went to the coal chute where there were some other boys picking up coal, when he thought he heard some boys whistle across the track, and went over to find them. Not finding them, he attempted to return to the west side of the track within a few feet of the rear of the caboose, but as he stepped upon the track the engine struck the cars to which the caboose was attached, causing the caboose to hit him, knocking him off the track, the car running over his right leg and smashing his left foot. The plaintiff brought his action on the theory that he was a licensee, and defendant contended that he was a mere trespasser, and consequently the only duty it owed him was to exercise ordinary care not to injure him after his presence in the dangerous situation was discovered. This court, in the opinion delivered by Mr. Justice Sharp, recognizing that there was great conflict of opinion among the different courts in the United States, thoroughly reviews the authorities, and as a result thereof the rule announced in the line of authorities represented by the opinion in Felton v. Aubrey, 74 Fed. 350, 20 C. C. A. 436, was followed. This court quoted with approval from the opinion in the Felton case, as follows:

"If the company has so long acquiesced in the continuous and open use of a particular place as a crossing as to justify the inference that it acquiesced in that use, it would seem to follow that it was bound to anticipate the presence of such licensees upon its track at the place where such crossing had been long permitted. In such a case it would not be consistent with due regard to human life, and to the rights of others, to say that such licensees are mere trespassers, or that the duty of the acquiescing company was no greater than if they were mere trespassers. Nonliability to trespassers is predicated upon the right of the company to a clear track, upon which it is not bound to anticipate the presence of trespassers. It therefore comes under no duty to a trespasser until his presence and danger are observed. But, if it has permitted the public for a long period of time to habitually and openly cross its track at a particular place, or use the track as a pathway between particular localities, it cannot say that it was not bound to anticipate the presence of such persons on its track, and was therefore not under obligation to operate its trains with any regard to the safety of those there by its license. This distinction between liability for the passive and active negligence of the owner of premises to licensees is recognized very clearly by the Court of Appeals of New York. Barry v. Railroad Co., 92 N. Y. 290 (44 Am. Rep. 377) ; Byrne v. Railroad Co., 104 N. Y. 363, 10 N. E. 539 (58 Am. Rep. 512)."

The case of Garner v. Turnbull, 94 Fed. 321, 36 C. C. A. 361, is also cited with approval. In that case it was urged by the receiver of the railway company that the child was a trespasser on the track; hence that the train operatives owed it no duty until its presence was discovered, and they were under no obligation to anticipate its presence on the track, or to be on the lookout for it or other persons at the place where it was run over and killed. The opinion observes that there are some adjudicated cases supporting that view, but states:

"We are persuaded that it is not a correct rule, as applied to those portions of a railroad track which many people have been in the habit of using as a footpath for a considerable period, without objection on the part of the railway company, although without any express license to do so. Train operatives ought to be required to take notice of such usages and conditions which actually exist and to regulate their actions accordingly. A proper regard for the safety of persons and property intrusted to their charge, and for human life in general, should impel them to do so. When, therefore, for a considerable period, numerous persons have been accustomed to walk across a railroad track or along a railroad track between given points, either for business or pleasure, railroad engineers should take notice of such practice, and when approaching such places, should be required to exercise reasonable precautions to prevent injuring them. Knowing the usage which prevails, they may reasonably be required to anticipate the probable presence of persons on or near the track

at such places, and to be on the lookout when their attention is not directed to the performance of their other duties. The natural impulses of a person who has a proper regard for the welfare of others would prompt him to thus act."

The court next reviews the Oklahoma cases, distinguishing A., T. & S. F. R. Co. v. Cogswell, 23 Okla. 181, 99 Pac. 923; A., T. & S. F. R. Co. v. Jandera, 24 Okla. 106, 104 Pac. 339; and Rogers v. C., R. I. & P. R. Co., 32 Okla. 109, 120 Pac, 1093, and approving and following the rule stated in Wilhelm v. Missouri, O. & G. R. Co., 52 Okla. 317, 152 Pac. 1088, heretofore mentioned.

The case of A., T. & S. F. R. Co. v. Miles, 69 Oklahoma, 170 Pac. 896, is not in point, since in that case there was no evidence to show that the track of the defendant company between Pawnee and Skeedee was commonly used by the public as a footpath, as alleged in the petition. Such being true, the plaintiff must be regarded as a mere trespasser, and a different rule of law applied than would have been the case had the allegations of the petition been supported by the evidence.

The facts in the cases of St. L., I. M. & S. R. Co. v. Gibson, 48 Okla. 553, 150 Pac. 465, and K. C. S. R. Co. v. Langley, 62 Oklahoma, 160 Pac. 451, clearly distinguish them from the case at bar, and will not here be specifically discussed.

In C., R. I. & P. R. Co. v. Austin, 63 Oklahoma, 163 Pac. 517, plaintiff was traveling across the yards and tracks of a railway company along a well-defined pathway, which had been constantly used by the public in large numbers for eight or ten years, and was seen by two of defendant's servants, but was given no warning, and was run against and injured. Upon this state of the record plaintiff was allowed recovery, this court stating:

"When it was made to appear that a well-defined pathway existed along the route which plaintiff was traveling, and this pathway had existed for a long period of time, and the use thereof by the public was continuous and in large numbers, these facts were sufficient to put the defendant company and its employes upon notice that persons were liable to be passing thereon and imposed upon them the duty to use that degree of care for the safety of human life that was commensurate with the circumstances; or, differently stated, to use reasonable and ordinary care to avoid injury to persons whose presence on its premises was known, or whose presence it might reasonably have anticipated; and under the circumstances disclosed by the evidence, defendant was guilty of gross negligence rendering it liable for any injuries occasioned thereby.

"Nor does the fact that the defendant had placed signs along its right of way warning the public against trespassing thereon absolve it from the duty imposed by the custom of the public which had ripened into a license, where it appears that this custom had continued unabated after the placing of said signs."

In the case at bar the evidence discloses that deceased met his death while walking along the defendant company's railroad track, near but not upon the public highway, outside the city limits of Bartlesville, but in a well settled community; that the track from the direction whence the train was approaching was but very slightly curved, so that deceased and the defendant's servants upon the engine might have been visible to each other while the train was a considerable distance up the track; that defendant had posted trespass signs along its right of way and had handed out some cards warning against trespassing on the right of way, but no heed was given to these warnings, of which fact defendant was fully aware, and no evidence was introduced that deceased had ever received or seen one of these cards. Some evidence was introduced to the effect that deceased was hard of hearing, though his wife testified that she had no trouble in making him understand, speaking in an ordinary tone of voice. Deceased gave no heed to the train nor indicated that he was aware of its approach until it was almost upon him, when he turned his head just as the train struck him. The evidence was conflicting as to what warning signals were given by the approaching train.

Upon this state of the record, in view of the authorities above set forth, it is our opinion that just and reasonable men might not agree that the defendant was not negligent under the circumstances, and the case was, therefore, one for submission to the jury under proper instructions.

It is insisted that the defendant's alleged negligence was not the proximate cause of the deceased's injuries and death. In Clinton & O. W. R. Co. v. Dunlap, 56 Okla. 755, 156 Pac. 654, we said:

"In a suit for personal injuries the question of whether or not defendant's negligence is the proximate cause of the injury sustained should be left to the jury where the evidence is conflicting, or where men of ordinary intelligence might differ as to the effect of the evidence on the point."

This rule is too well settled to require the citation of the many other cases to the same effect in this and other jurisdictions. The instant case is clearly within this rule.

The defendant complains of certain of the court's instructions to the jury. Instruc-

tion No. 10 was a general definition of a licensee. Defendant's objection to it is that it is abstract and calculated to mislead the jury. It appears to be in entire accord with definitions of that term heretofore approved by this court. Instruction No. 11 states that where a railroad track has been used for a long time as a common passageway by the public with the knowledge or tacit consent of the defendant, or where in the exercise of ordinary care it must have known of such use, a pedestrian so using said track is a licensee. We cannot see how the rights of the defendant could have been prejudicially affected by this instruction. Instruction No. 13 states the degree of care required of a railroad company under circumstances such as those in the case at bar, as laid down by Thompson on Negligence (2nd Ed.) sec. 1726, and followed by this court in the Wilhelm case and the Hodge case. Defendant's requested Instruction No. 23 was to the effect that there was no evidence in the case that the railroad company acquiesced in the use of its tracks as a walkway in the vicinity of the accident. In view of our statement of the law and facts in this opinion, it is clear that the failure to give this instruction was not error. While Instructions Nos. 2, 18 and 19, requested by the defendant and refused by the court, are doubtless correct statements of law, the failure to give them could not prejudice the rights of defendant, since they are covered in other instructions given by the court. Requested Instruction No. 21 was to the effect that if the defendant had posted the "No Trespass" signs and had taken other means to notify persons not to use its tracks as a walkway, persons thereafter so using them were trespassers. The instruction was incorrect, since it did not take into consideration that continued use of a track as a pathway may place the additional burden on the railroad company to look out for any persons who are or may be on the pathway. The instruction was, therefore, properly refused. In view of the authorities heretofore cited, the failure to give requested instruction No. 22 was not error.

Instruction No. 14 was to the effect that the railroad company was under no duty to deceased to sound the statutory signals, but they might consider whether or not such signals were given in determining what warning was given deceased. This was not error. Dickinson, Rec'r. v. Ganbery, 71 Oklahoma, 174 Pac. 776; Lusk v. Haley, 75 Oklahoma, 181 Pac. 727. It covers practically everything asked for in requested Instructions Nos. 4, 5, and 14.

Requested Instruction No. 3 was to the effect that defendant had the right to operate its train at any rate of speed it desired consistent with the safety of the train and passengers. This is clearly contrary to the rule heretofore announced in this opinion, and the court did not err in refusing to give it. The correct rule was stated by the trial court in his Instruction No. 13 and in Instruction No. 15.

We have carefully examined the record and find no reversible error therein. The judgment of the trial court is, therefore, affirmed.

OWEN, C. J., and KANE, McNEILL, JOHNSON, and HIGGINS, JJ., concur.