**ST. LOUIS & S. F. R. CO. v. STACY.**

No. 6376—Opinion Filed March 21, 1916.

On Rehearing, March 26, 1918.

Second Petition for Rehearing Denied Dec. 22, 1919.

(Syllabus by the Court.)

**1. Carriers—Persons on Platform of Station — Invitation — "Invitee" — "Bare Licensee."**

A person who goes upon the platform of a common carrier to accompany friends and acquaintances to trains upon which they are about to depart, or who goes to such station to attend in some proper way the shipment of a corpse, is upon such premises by implied invitation, but a person who goes to see the shipment of a corpse and is not interested in the manner of such shipment, but is actuated by curiosity, is a "bare licensee."

**2. Same.**

A person who goes upon the premises of a carrier by implied invitation, by abandoning the original purpose which implies such invitation, and by going through curiosity, or for their own pleasure, upon a part of the carrier's platform, where the original purpose would not have taken such person, may thereby change his status from that of an "invitee" to that of a "bare licensee."

**3. Appeal and Error—Improper Remarks of Counsel—Objection and Exception.**

In order to preserve for consideration by this court improper remarks of counsel, it is only necessary to seasonably object thereto, and, if the objection be overruled, to except to the ruling. It is not necessary to request the court to admonish the jury in regard to such remarks.

**4. Same—Harmless Error.**

Remarks of counsel examined, and held prejudicial. Further held that it was error upon the part of the trial court to refuse and neglect to sustain an objection to such remarks, and to neglect to properly admonish the jury in regard thereto.

On Rehearing.

**5. Carriers—Persons on Platform—Implied Invitation—"Invitee."**

A person who goes upon the platform of a railway station to accompany friends and acquaintances to a train upon which they are about to depart as passengers, and to attend in some proper way the shipment of a deceased person, a relative of the passenger and an old friend of the plaintiff, whom the passenger is taking to another state for burial, is upon such premises by implied invitation of the railway company.

**6. Same—Care Required.**

A railway company owes such invitee the duty of using ordinary care to keep in a reasonably safe condition all portions of its platform to which he would naturally or ordinarily be likely to go.

**7. Same—Invitee's Use of Platform—Question for Jury.**

Whether the place on the platform where the plaintiff was injured was a place where she would naturally or ordinarily be likely to go is a question of fact for the jury.

Error from Superior Court, Muskogee County; Farrar L. McCain, Judge.

Action by Betty Alexander, revived after appeal in the name of Irving Stacy, her administrator, against the St. Louis & San Francisco Railroad Company, for personal injuries. Judgment for plaintiff, and defendant brings error. Reversed, and remanded for new trial.

W. F. Evans, R. A. Kleinschmidt, and Fred E. Suits, for plaintiff in error.

B. B. Blakeney and J. H. Maxey, for defendant in error.

Opinion by BURFORD, C. The facts depended upon for recovery in this case, as alleged by the plaintiff, were substantially as follows: Betty Alexander, the plaintiff, was an old friend of a Mrs. Gossett and of her mother. The mother died, and transportation for the corpse over the lines of the defendant from Davenport, Okla., was arranged. A son of Mrs. Gossett, one Granby Hazelrigg, was to accompany the body on the journey. Mrs. Alexander, by invitation of Mrs. Gossett, accompanied her to the defendant's depot at Davenport, to meet the train upon which the corpse was to be shipped. This train arrived a little after 7 o'clock in the evening at a time of year when it was dark at that hour. After bidding good-bye to Hazelrigg, after the arrival of the train, Mrs. Alexander started forward to where the corpse was being loaded into the baggage car, and in doing so stumbled over a piece of gas pipe lying on the ground, and fell against the handle of a

baggage truck, standing on the platform, which handle was down. She fell to the ground, fracturing her hip and spraining her ankle. The presence of the gas pipe, the fact that the platform was not properly lighted, are alleged as negligence. The defendant answered by a general denial and pleaded contributory negligence. The evidence was conflicting as to the lighting of the platform. There was some evidence tending to show negligence in this regard. The only evidence in regard to the gas pipe was that of Mrs. Alexander, who did not testify that she saw any such pipe, but that she stepped upon something round, which turned under her foot, and that of J. L. Robinson, a brother-in-law, who testified that he found a piece of gas pipe near the truck handle early upon the morning following the accident. None of the witnesses present the night of the accident—and there were many—saw any such pipe. The only evidence of negligence in regard to the truck handle is that it was down, and plaintiff stumbled over it. The evidence upon the part of the defendant showed without contradiction that its employe had hooked up the handle when the truck was last used, that it was so hooked up shortly before the train arrived, and that there were some boys playing about the truck about the time the train came in. The undisputed evidence further showed that Mrs. Alexander left Mrs. Gossett at whose invitation she had come and who was herself not a prospective passenger, bade good-bye to Hazelrigg, and then went toward the baggage car to see the corpse loaded; that this duty was being attended to by the regular pall-bearers; that the coaches for white passengers stopped west of the waiting room, while the truck was east of the waiting room in a sort of alcove formed by the bay window of the depot and an inclined runway to the freighthouse; that there was ample passageway between the truck and the train, but that plaintiff chose to go between the truck and the depot, and in so doing stumbled over the truck handle and was injured. There was conflict in the testimony as to the location of the truck; the witnesses for the defendant placing it 44 inches from the depot while those for plaintiff placed it further out in the platform.

Under this state of facts it is urged that it was error for the trial court to refuse to instruct a verdict for defendant. In our judgment there is no reasonable evidence supporting the allegation of negligence in leaving the truck handle down. It is not a case where the maxim res ipsa loquitur applies, especially in view of the defendant's undisputed evidence as to the condition of the handle shortly before the accident. The evidence in relation to the gas pipe, though perhaps sufficient to go to the jury, is far from convincing. There is evidence of negligence in relation to the lights sufficient to carry the case to the jury, and to support a verdict for plaintiff, unless, as contended by defendant, the plaintiff, was, under the circumstances of the case, not an invitee, but a bare licensee to whom defendant owed only the duty not to injure her by lack of reasonable care. Many authorities pro and con are cited upon the proposition of the duty owed by a carrier to persons not passengers and upon the distinction between persons impliedly invited and bare licensees. In our judgment, it is only necessary to consult the decisions of our own state in order to determine the question. In A., T. & S. F. R. Co. v. Cogswell, 23 Okla. 181, 99 Pac. 823, 20 L. R. A. (N. S.) 837, this court, in considering the case of a person injured while going to a train to meet a passenger upon purely private business not connected with that of the carrier in any way, said:

"A railway company is bound to exercise ordinary care for the safety of a person who is upon its premises for the purpose of meeting an incoming passenger, and is liable to such person for injuries sustained on account of the railway company's failure to exercise such care. A person went to the depot of a railway company to meet an incoming passenger, with whom he had an engagement to meet him for the purpose of continuing, after he had met him, a business negotiation between them. Held, that the railway company was liable to such person for injuries received by him because of the negligence of the company in permitting its station platform to become in a dangerous condition, on account of which said person fell and was injured."

In the opinion the court says:

"A person who does not go upon the premises of a railway company as a passenger, servant, trespasser, or as one standing in any contractual relation to the corporation, but who is permitted by the company to come upon its premises for his own interest, convenience, or benefit, is upon the premises of such railway company as a licensee. * * * Woolwine's Adm'r v. Ches. & O. R. Co., 36 W. Va. 329, 15 S. E. 81, 16 L. R. A. 271, 32 Am. St. Rep. 859; Sweeney v. Old Colony, etc., R. Co., 10 Allen (Mass.) 368, 87 Am. Dec. 644; Pittsburg, F. W. & C. R. Co. v. Bingham, Adm'x, 29 Ohio St. 364; Burbank v. Ill. Cent. R. Co., 42 La. Ann. 1156, 8 South. 580, 11 L. R. A. 720; Elliott on Railroads (2nd Ed.) vol. 3, par. 1251. On the other hand, one who goes upon the premises of a railway company to transact business

with it or its agents or to transact business in the operation of the road, or who is thereby invitation of the company, express or implied, is lawfully there, and the railway company owes him a duty of using ordinary care in the construction and maintenance of its depot and platforms to avoid injuring him. Bennett v. L. & N. R. Co., 102 U. S. 577, 26 L. Ed. 235. One who goes with the permission and acquiescence of the owner upon the premises of another solely for his own pleasure and benefit goes as a licensee. Benson v. Baltimore Traction Co., 77 Md. 535, 25 Atl. 973, 20 L. R. A. 714, 39 Am. St. Rep. 436; 3 Elliott on Railroads (2d Ed.) par 1248. But one who goes upon the premises of another in a common interest or to a mutual advantage is there under the implied invitation of the owner. The test as to whether there is an implied invitation is stated by Mr. Campbell in his treatise on Negligence in the following language: 'The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is mere pleasure or benefit of the person using it.' This language is quoted with approval in Bennett v. L. & N. R. Co., supra; but the court in that case does not, and we do not here, undertake to say that this principle furnishes an invariable test by which it may be determined in every case whether a person is upon the premises of another under an implied invitation. The courts have not, to our knowledge, fixed any general rule by which such test may be made, and whether an invitation exists in any case must be determined by the circumstances surrounding the case. But, where the facts of any case bring it within the language of the first sentence of the above quotation, an invitation is implied. It now seems to be the doctrine of the various state courts of the Union that one who goes to the premises of a railroad company to meet an incoming passenger or to accompany a departing passenger is within this rule, and goes upon the premises of the railway company under an implied invitation of the company. * * *"

The omitted portion of this quotation is that relating to degree of care disapproved by the court in Wilhelm v. M., O. & G. R. Co., 52 Okla. 317, 152 Pac. 1088, L. R. A. 1916C, 1029.

"The general practice of the members of the public of accompanying departing friends and acquaintances to the stations of railway companies upon whose passenger trains such friends and acquaintances are to depart, and of meeting and receiving at said places friends and acquaintances who are passengers on incoming trains, is one in which the railway company has an interest in common with the members of the public who go to its stations for such purposes. One who travels upon passenger trains must go to the places provided by the railway company

for receiving him and for beginning his journey, and he has a right to have some one carry or accompany him to such places, and one who rides upon the passenger trains of a railway company must, in order to reach his ultimate destination, depart from the train and from the premises of the railway company. and such person has a right to have some one meet him and accompany him in his departure therefrom. In many instances, without such right, persons would be unable to travel upon passenger trains or to do so only with great inconvenience. It is true the facts in the case at bar do not make it such a case, but the principle is illustrated by such instances. The right of a person who travels upon passenger trains to have his friends and acquaintances accompany him in departing to the station of the railway company, or to meet and receive him at such place upon his coming, adds to the convenience and pleasure of traveling upon the company's railroad, and tends to lessen its inconveniences and burdens, and thereby tends to encourage travel, in all of which the railway company has an interest. Its interest in having passengers met at its stations by their friends and acquaintances is one in common with the interest of the persons who meet such a passenger, and we do not think that the reason of the rule requires it to be narrowly confined only to those persons who go to meet an incoming passenger purely for social pleasure or from the promptings of friendship or kinship; and the fact that one who meets an incoming passenger, acquaintance, or friend is prompted by the motive of ultimately consummating a business transaction, which may result profitably to him or both to him and the passenger, does not take him without the rule."

This doctrine has been followed by this court in A., T. & S. F. R. Co. v. Jandera, 24 Okla. 106, 104 Pac. 339, 24 L. R. A. (N. S.) 535, 20 Ann. Cas. 316.

It is true that these cases do not refer to persons accompanying a corpse, but it cannot be gainsaid that there is a duty to the remains of the dead on their way to their last resting place, as, well as to the living. The same tender feelings which draw friends and relations to be with the traveler at the hour of his arrival or departure urge care and attention to the remains of the dead. A corpse is the proper subject of a shipment by rail, and for it is purchased a passenger ticket. We are unwilling to hold that a person may not, under proper conditions, accompany a corpse to a train, upon which it is about to be shipped, without becoming a trespasser upon the carrier's property. But it does not follow that the plaintiff in this case is protected by the rule announced. The evidence tended to show strongly that she came to the depot to comfort Mrs. Gossett. She did not accompany the corpse, nor,

so far as the record shows, did she have anything to do with the loading, transportation, or procuring tickets for the corpse. She might have come to the depot as accompanying Mrs. Gossett and to bid good-bye to Hazelrigg, and by reason thereof have become an invitee of the carrier to whom it would owe a duty of ordinary care to see that she was not injured while going about the business legitimately connected with the object for which she came, and yet, if she abandoned those objects, and out of idle curiosity went to see the loading of the corpse, with which she had nothing to do, she would lose her status as an invitee and become a bare licensee, and, if injured otherwise than by lack of reasonable care, upon a part of the premises where the carrying out of the original objects of her visit would not reasonably have taken her, the carrier would not be liable. The evidence strongly tends to show that this is exactly what occurred, but there was some evidence which made her intention and objects in going to see the loading of the corpse, and linked therewith her status as an invitee or bare licensee at that time, a question for the jury under proper instructions of the court. The trial court gave an instruction somewhat along this line as follows:

"The jury are instructed that if they believe and find from the evidence that the plaintiff on the 19th day of December, 1912, visited the defendant's station from motives of curiosity or for purposes not connected with the business of the defendant she is what is known in law as a 'bare licensee,' and cannot recover from the defendant on account of any injury sustained, unless such injuries were wantonly or willfully inflicted; and unless you so find, your verdict should be for the defendant."

This instruction comprehended nothing of the elements of possible change of legal relation between the plaintiff and the carrier after plaintiff's arrival at the station.

Defendant offered an instruction, which was refused and exceptions taken, which reads as follows:

"You are instructed that if you believe and find from the evidence that plaintiff was not assisting in the loading of the corpse upon defendant's train and not interested in the manner of loading same, would not be entitled to recover for the injuries complained of here, and your verdict should be for the defendant."

This instruction might have been more aptly worded, but in our judgment it fairly raises the question of the plaintiff's status at the time the corpse was being loaded. There can be no question under this record but that the place where plaintiff was injured was one in which she would not have been in pursuance of the object of comforting Mrs. Gossett or bidding farewell to Hazelrigg. Her injury was occasioned solely by her desire to see the loading of the corpse. If at that time she was not even "interested in the manner of loading" it, she could have had no other object in going to the place where the loading was being done except curiosity. Although this instruction might have been coupled with the one given and put in more apt language, in our judgment, under the circumstances in view of the fact that the instruction given, which held the railway company only for wanton or willful injury, was not excepted to by either party (see Wilhelm v. M., O. & G. R. Co., supra), it was error to refuse it.

Error is also alleged upon the failure of the court to sustain an objection, and admonish the jury in relation to certain remarks made by counsel for the plaintiff. In the course of his closing argument counsel for plaintiff said:

"Gentlemen of the jury, these were our witnesses. We have been down there, and taken their depositions, and the testimony they gave at that time was altogether different from that they gave on the stand, but when we got ready to use the depositions we found that the railroad company had brought the witnesses here, and under the law we couldn't use the depositions. We took the deposition of a trained nurse that waited on Mrs. Alexander, and when we got ready to use that deposition we found that the railroad company had brought her here, too. (The defendant objects to remarks of counsel, and asks the court for a ruling on said objection.)

"The Court: I will give you an exception. (Defendant excepts.)

"Counsel for Plaintiff (to the jury): 'I don't care how many exceptions they take. To my mind the meanest crime on the face of the earth is base ingratitude.'"

These remarks were highly improper. In the first place, counsel evidently desired to convey the impression that it was wrong for the defendant to bring witnesses to the trial whose depositions had previously been taken by plaintiff. Such an inference is so obviously improper that the only purpose which could have animated counsel was to prejudice the jury against the defendant by imputing to it some underhand practice. Courts strongly favor the production of a witness upon the stand. The demeanor, manner of testifying, and conduct of a witness are of almost as great importance as his testimony. Sometimes they rightfully give

the lie to the spoken words, which fall from his lips. It is the fact that the jury sees the witnesses that has led appellate courts in cases at law to refuse to pass upon the weight of the evidence. It was largely because of the fact that formerly the practice was general to try equity cases upon deposition that the rule that appellate courts would pass upon the weight of the evidence in equity cases was established. In the instant case there could be no question that the presence of the witnesses was not only proper, but beneficial, to a fair trial.

But the considerations above referred to are not all which condemn the remarks made by counsel. After the evidence was in, without the sanctity of an oath and without the privilege of cross-examination by the other party, he proceeds to testify that the evidence of the witnesses as given in the deposition "was altogether different" from that they gave on the stand. The statement was not in any manner justified by the record. If counsel took depositions, they were certainly in his control or in the files of the court. If there was a variance in the testimony given by the witnesses on the trial and in the depositions, the depositions were competent, tending to contradict the witnesses. Not a deposition nor portion of a deposition of any witness called by the defendant was offered at the trial, either for this purpose or any other. Under such circumstances it was entirely outside the record and highly improper and prejudicial for counsel to state that the testimony given in the deposition was "altogether different" from that given on the witness stand.

In the City of Shawnee v. Sparks, 26 Okla. 665, 110 Pac. 884, improper remarks were made, an objection taken, and the trial court admonished the jury as follows:

"Gentlemen of the jury, you will not consider statements of counsel made in their argument outside the record. You will consider only the evidence before you and the instructions of the court."

In commenting thereon this court said:

"Where counsel in argument makes statement of a material fact not in evidence against the objection of the other party, he violates the right of a fair trial, and where the trial judge fails to pass squarely on the objection, and, if sustained, fails to admonish the jury to disregard such statement as not in evidence, we must reverse, unless this court can ascertain from the record that no harm resulted."

And again:

"It will not do to say that the objection of counsel followed by the admonition of the judge not to consider the statement as to the interest or lack of interest of defendant in the case as affecting its liability nor the absence of Judge Cassidy, but to determine the question of liability from the law and the evidence, was sufficient to cure the prejudice; for the reason that it was the duty of the judge to pass squarely upon the objection, and either sustain or overrule, and if sustained to instruct the jury to disregard the fact stated as not in evidence, and not, by telling them to determine the question of liability on the law and the evidence, apparently leave it to the jury to first determine whether the objectionable statement was or was not in evidence."

In the case at bar counsel objected, and specifically asked the court to pass upon the objection, and the court, without ruling upon said objection, stated, "I will give you an exception." This was all that counsel for defendant could do, and is sufficient to raise the question for consideration here.

In Coalgate Co. et al. v. Bross, 25 Okla. 245, 107 Pac. 425, 138 Am. St. Rep. 915, Mr. Chief Justice Kane, speaking for the court, said:

"There is considerable confusion upon the question, how may error in allowing a prejudicial line of argument be saved for review in an appellate tribunal. This court has not committed itself on the question, and is disposed to follow the rule approved by Mr. Thompson in his work on Trials (vol. 1, sec. 962) that 'the more correct view is that such an irregularity can only be saved for appellate review by an objection seasonably made and exception properly taken, if overruled.'"

In City of Shawnee v. Sparks, supra, this court held that where such an objection was made, it was the duty of the trial court to pass squarely upon the objection, and, if sustained, to properly admonish the jury.

In St. L., I. M. & S. R. Co. v. O'Connor, 43 Okla. 268, 142 Pac. 1111, it was said:

"Counsel failed to request the court to withdraw said remarks and to admonish the jury not to consider same. Under * * * Coalgate Company v. Bross, 25 Okla. 244, 107 Pac. 425, 138 Am. St. Rep. 915, this is a prerequisite, in order to secure favorable consideration by the appellate court."

It is our view that the expression just quoted was not intended to go beyond the holding in the case there cited, and that it was not intended to hold that, in addition to an objection to the improper remarks and an exception if overruled, counsel must request the court to withdraw the remarks and admonish the jury, as that would be a duty incumbent upon the court to perform under City of Shawnee v. Sparks, supra, if the ob-

jection were sustained, and a useless formality if the objection were overruled. However, in order that there may be no confusion in the practice, anything in St. L., I. M. & S. R. Co. v. O'Connor, supra, relating to this subject, which goes beyond the rule laid down in Coalgate Co. v. Bross, supra, is hereby expressly overruled.

For the errors noted, the cause should be reversed, with directions to the trial court to grant a new trial and take such further proceedings as may be proper and not inconsistent with this opinion.

#### On Rehearing.

PER CURIAM. After oral argument and a careful examination of the record upon petition for rehearing, the court is satisfied that the judgment of the court below was properly reversed by the commission on account of improper remarks of counsel for plaintiff in his argument to the jury. We are unable, however, to concur in that part of the opinion which holds that it was error for the trial court to refuse to give the following instruction requested by counsel for defendant:

"You are instructed that if you believe and find from the evidence that plaintiff was not assisting in the loading of the corpse upon defendant's train, and was not interested in the manner of loading same, she would not be entitled to recover for the injuries complained of here, and your verdict should be for the defendant."

As this part of the opinion would be likely to mislead the trial court upon the new trial which must be had, we deem it necessary to state briefly the applicable principles of law.

The commission properly holds: That a person who goes upon the platform of a railway station to accompany friends and acquaintances to a train upon which they are about to depart as passengers, and to attend in some proper way the shipment of a deceased person, a relative of the passenger and an old friend of the plaintiff, whom the passenger is taking to another state for burial, is upon such premises by implied invitation of the railway company. Undoubtedly the uncontradicted evidence shows that the plaintiff belonged to this class of persons. As an invitee the company owed the plaintiff the duty of using ordinary care to keep in a reasonably safe condition all portions of its platform to which she would naturally or ordinarily be likely to go. 3 Thompson on Negligence, sec. 2691; A., T. & S. F. R. Co. v. Cogswell, 23 Okla. 181, 99 Pac. 923, 20 L. R. A. (N. S.) 837; Banderob

v. Wisconsin Central R. Co. v. Evans, 52 Neb. 50, 71 N. W. 1062.

Passengers, invitees, or others bearing similar relations to railway companies are not required to place themselves in straight jackets upon their arrival at stations, in which they must remain while awaiting the arrival of their train, or the departure or arrival of their friends. Such persons are entitled to reasonable freedom of action upon the platforms provided by the company for their accommodation and convenience, and the company is under obligation to keep in a safe condition all portions of its platform to which such persons do or would naturally resort. Whether the place where the plaintiff was injured was a place where she would naturally or ordinarily be likely to go is a question of fact for the jury. Banderob v. Wisconsin Central R. Co., supra. This phase of the case was sufficiently covered by the following instruction, which was given to the jury by the request of counsel for defendant:

"You are instructed that the defendant is required to maintain in a reasonably safe condition only such portions of its platform or premises on or upon which passengers, or those upon the premises for the purpose of meeting or taking leave of passengers, may be expected to go; and, if you believe and find from the evidence in this case that the truck in question was so placed as not to endanger the safety of persons boarding or leaving its trains at the places provided for that purpose, or of persons accompanying or meeting such passengers at such places, the defendant would not be liable to one upon such premises who, for motives of curiosity or otherwise, leaves a safe place provided for such passenger, and sustains injury on account of having gone to a place not provided for the accommodation of passengers, and at which such passengers or their attendants are not reasonably to be expected."

With these modifications, the opinion prepared by the commission is approved, and the petition for rehearing denied.

All the Justices concur.