## ST. LOUIS-S. F. R. CO. v. DONAHOO et al.

No. 11058—Opinion Filed April 19, 1921.

Rehearing Denied May 17, 1921,

(Syllabus.)

**1. Railroads—Care Required—Pedestrians Near Tracks.**

Where a railway company has permitted or acquiesced in allowing the public to use its right of way and yards as a footpath or passageway at all times of the day and night, and its agents, servants, and employes knowing of such use, said railway company is bound to exercise such degree of care in switching its cars in said yards that would be commensurate with the danger to which would be exposed who might be using its yards as a pathway and whose presence might reasonably be anticipated, considering the number of persons traveling through the yards. Whether or not that has been done is a question to be submitted to the jury under proper instructions.

**2. Same—Used Ways on Right of Way.**

It requires a more determined effort on the part of a railway company to stop the public from using its right of way and yards as a footpath or passageway, where such use has been continued for a long period of time and by a large number of people, than it requires to prevent its use in the first instance. Where there has existed a license, either express or implied, to use the right of way and yards of the railway company by the public as a footpath, and this has continued for a long period of time and is known to the agents, servants, and employes of such railway company, the company is bound to use reasonable care to avoid injury to those persons whose presence there it may reasonably anticipate.

3. **Death—Action for Wrongful Death—Parties Plaintiff—Children of Deceased —Measure of Damages.**

Under sections 5281 and 5282 of the Revised Laws of 1910, the children of the deceased, where the wife of the deceased was dead at the time of bringing the action, may maintain an action in their own name, or by their guardian or next friend, for the wrongful death of their father, and the measure of damages would be the same as though the action were brought by the administrator of the estate or the widow of the deceased.

4. **Appeal and Error—Question of Fact—Verdict—Action for Wrongful Death.**

Where there are no eye-witnesses to the accident, but the undisputed evidence shows that freight cars being operated and moved by the railway company ran over the deceased and caused his death, the railway company may present to the jury its theory of how the accident occurred, but the plaintiffs in the action have the same right to present to the jury their theory of the accident. Where both of the theories so advanced are not so absurd or unreasonable as to make them almost impossible, the jury are at liberty to adopt whichever theory seems to them to be most reasonable under the evidence, and the railway company is not entitled to have this court adopt its theory and exclude the other. The jury, by returning a verdict for the plaintiffs in the court below evidently adopted their theory. That theory not being unreasonable under the evidence and the verdict being supported by the evidence, it will not be disturbed on appeal.

5. **Appeal and Error—Judgment on Supersedeas Bond.**

Section 5254 of Revised Laws of 1910, as amended by chapter 249, Session Laws of 1915, provides that when a supersedeas bond has been given to stay execution pending an appeal to this court and the judgment is affirmed, judgment shall at the same time be entered against the sureties on such undertaking. For the purpose of carrying into effect said statute, this court has amended rule No. 11 to read as follows:

"(a) Where the original supersedeas bond or a certified copy thereof is included in the case-made or transcript of the record and that fact is called to the attention of the court in the briefs of counsel for defendants in error, this court will, in all proper cases. where defendant in error is entitled thereto. render judgment thereon at the same time judgment is rendered in the cause.

"(b) If the original supersedeas bond or certified copy is not included in the case-made or transcript of the record, or if so included and not called to the court's attention in the brief. the defendant in error, or the party entitled thereto, may, after the opinion of the court is filed, and prior to the time of issuing the mandate, file with the clerk of the court a motion for judgment on the supersedeas bond and attach to said motion a certified copy of the supersedeas bond, if a copy has not been included in the case-made or transcript, and this court will, in all proper cases where the party applying is entitled thereto, enter an order rendering judgment on said bond.

"(c) No motion will be entertained by this court to enter judgment upon a supersedeas bond unless the same is filed with the clerk of this court prior to the issuing of the mandate."

6. **Same.**

In this appeal the case-made contained a copy of the supersedeas bond. The defendants in error called this to the court's attention in their brief and asked that judgment be rendered against the sureties on said bond. The judgment of the trial court having been affirmed, this court will render judgment on the supersedeas bond under rule No. 11.

Error from District Court, Hughes County; E. F. Lester, Assigned Judge.

Action by Roy Donahoo and four others, by their guardian and next friend, M. C. Burrell, to recover damages for the wrongful death of their father, J. A. Donahoo, against the St. Louis-San Francisco Railway Company, a corporation. Verdict and judgment for plaintiffs, and defendant brings error. Affirmed.

W. F. Evans, Kleinschmidt & Grant, and Herman S. Davis, for plaintiff in error.

W. T. Banks, J. L. Skinner, and W. B. Toney, for defendants in error.

MILLER, J. This action was commenced in the district court of Hughes county by Roy Donahoo, Forest Donahoo, Carliss Donahoo, Vera Donahoo, and Albert Donahoo, by their guardian and next friend, M. C. Burrell, defendants in error, against the St. Louis-San Francisco Railway Company, a corporation, to recover damages for the death of J. A. Donahoo, who was killed in the yards of the defendant company at Henryetta on March 25, 1917. The wife of J. A. Donahoo, deceased, died subsequent to the death of her husband and before this action was commenced; the above named plaintiffs being the minor children of deceased, J. A. Donahoo, and his only surviving heirs at law. The case was tried before a jury, which resulted in a verdict and judgment in favor of plaintiffs for $10,000, to reverse which defendant appeals to this court and appears here as plaintiff in error.

The · plaintiff in error contends that the negligence of the deceased directly and proximately contributed to his death; that he was trespassing upon the property of said defendant at a place where he had no right to be at the time he met his death. While the plaintiff in error admitted its yards had been used both day and night for many years as a passageway or footpath by people going to and from the northeast part of town to the main part of town, yet it claims that it had protested against this use, and therefore is not liable in this action.

The plaintiff in error assigns a large number of errors, then in its brief and argument discusses two propositions:

"First. Error of the court in overruling the motion of defendant for a directed verdict.

"Second. Error of the court in giving certain instructions to the jury."

In considering the errors discussed, it will be necessary to review the testimony:

J. A. Donahoo was a strong, able-bodied man of approximately 40 years of age at the time of his death. He was a skilled workman and engaged in operating machinery in a coal mine at Henryetta. His average earning capacity was approximately $200 per month. On the night of March 25, 1917, between eight and nine o'clock, he was crossing the yards of the defendant company in going from the main part of the city of Henryetta to his home in the northeast part of town. While he was crossing these yards a switching crew in making what is known as a "flying switch" kicked a string of 16 freight cars down the track; there was no light or person on the rear car of this string to give any warning. Some of these cars in the middle of the string ran over deceased and caused his death; this was revealed by an examination of the car wheels.

Mrs. Jewell testified: The yards and the portion of the railway track where deceased was killed were in plain view of her house; she had lived there five years, and at least two-thirds of the public traveled through these yards. She always went through there once a day and sometimes more in going to town to get her daughter, who worked at the telephone office. Sometimes it was between nine o'clock and midnight that she would be required to go with her daughter back and forth to her work. She had never been warned by any employes or officers of the railway company to keep off of the tracks or out of the yards. She had not seen any sign posted by the railway company warning the public that the yards were private property,

and for people to keep off. The road or path used by the public was made of cinders and chat; this path was also used by the employes of the railway company when doing their switching in the yards.

W. F. Staggs testified: He had lived in Henryetta since 1912, and during all of that time the railway right of way and yards of the defendant were being used by the public in going to and coming from their homes. He had so used the right of way and yards where deceased was killed.

Max Kleiser testified: He was the freight conductor in charge of the switching at the time deceased was killed, which was between eight-thirty and nine o'clock at night. His crew was engaged in switching cars and had shoved or kicked a string of 16 cars down the track. They did not have any lookout or brakeman on the head end, and the only noise the cars would make would be the click of the wheels over the joints of the rails. He further testified about some signs which said "Private Property, Keep Off"; one was at the north end of the yards and another at the Saddle Rock Restaurant. Then in response to a question as to how far these signs were from where deceased was killed, he answered: "Well, one at the south end of the yards and one at the Saddle Rock Restaurant, I would say about two blocks south of where I found the body. One hung up north of Harvey street, about four or five blocks, north end of the yards."

M. C. Burrell testified: The right of way and yards of the railway company in and about where deceased was killed had been used and was used by pedestrians in going to and coming from their homes. It was the usual and general route traveled by people living in that part of the city. He further testified as to the ages of the children of deceased at the time of the accident. Roy Donahoo was 19 years old; Forest Donahoo was 13; Carliss Donahoo was ten; Vera Donahoo was eight; Albert Donahoo was five years old.

R. F. Wise testified: He had charge of the Henryetta Coal Mining Company and deceased worked at his mine prior to the time of his death. That deceased worked regularly and was a skilled workman running an electric cutting machine. The books showed deceased had drawn as his salary or wages for the month of February preceding his death, $192.50, and for March, $214.15.

S. A. Brooks testified: He was station agent of the railway company at Henryetta and had lived there since December, 1912.

He had notified people not to trespass on the yards of the defendant, and had complained to the mayor and police; the city officials of Henryetta had extended the corporate limits of the city so as to include the switching yards of the defendant. A man had been sent from Sapulpa to lecture at the school-house in Henryetta on the danger of going through the yards where the trains are switching and he distributed a large amount of literature in regard to it at the school-house among the children and left some at the station. A policeman had been down there a few times, gone through the yards and warned the people out, but the people paid no attention either to the warnings of the policeman or to the warnings of the witness. He testified about some signboards, but made the following admissions on cross-examination:

"Q. Now, where are these signboards you talked about? A. One on Henry street, one some further down, and one that did set right where the freight house, set there right where you go into the yard, but in moving the freight house, moving it in March, that was torn down. That sign had to be taken down. Q. Now, isn't it a fact that down here Division street is the one that crosses just north of the depot, isn't it? A. No, sir. Q. What street is that? A. Trudgeon. Q. Trudgeon? Well, Trudgeon; that crosses just north of the passenger depot? A. Yes, sir. Q. And Main street crosses just south of the passenger depot? A. Yes, sir. Q. Sign there just south of the passenger depot? A. Yes, sir. Q. Railroad crossing? Cross board? A. Yes, sir. Q. Railroad board up, 'Safety First,' down there? A. Yes, sir. Q. And that is all? A. That is probably all on the new one, but the old signboard stood there before, stood right here where this water tank was. Q. How long has this signboard I am speaking of been there, on Main street? A. So far as I know, been there always. Q. Since 1912, since you have been there? A. Yes, sir. Q. Isn't it a fact that there is another signboard away up here where Henry street crosses the railroad track, and doesn't that signboard, it has an arm this way, says, 'Railroad Crossing,' and on the cross it says 'Safety First'? A. Yes, sir; one up there and one there. Q. And that is all it says? A. And one on Trudgeon. Q. And that is all it says? Now, where is that on Trudgeon? A. Right on the track. Q. And that has a cross-arm this way, has it? A. Yes, sir. Q. And it has a point of the cross says 'Safety First'? A. Yes, sir. Q. And that is all? A. Yes, sir. Q. Now, isn't it a fact that there is not a single, solitary thing on the track anywhere that says 'Private Property, Keep Off'? A. I am not sure about this one down there, but I am almost positive that the signboard there like that one set along down there is not like I told you the one set up there before we moved the

freight house did set to start with, but when we moved the freight house that was taken down and moved the freight house in March. Q. This last March? A. No, sir; March, 1917. Q. The same month Donahoo was killed? A. Yes, sir. A. And they had an old sign right south of the old water tank there said 'Private Property'. Q. That is not there now? A. No, sir; that is not there now. Q. Isn't it a fact that that one by the freight house was the only one there in 1917, March 25th? A. That one there is only one had south end of the yard at that time. Q. And that was sitting west of the freight house? A. No, sir; sitting north of the freight house, where the freight house stands now. Q. You haven't succeeded, then, in keeping people from using that as a passway? A. Not all of them. Q. Isn't it a fact that the only ones that you have succeeded in keeping from using it as a passway are those that are killed? A. No, sir; some them have moved away from town. Q. Moved away from town? A. Yes, sir."

W. R. Grace testified: He lived in Henryetta from 1912 to 1918. He was yardmaster of the railway company at the time of the death of J. A. Donahoo. During the time he was yardmaster the people continued to use the yards as a thoroughfare for pedestrians. He spoke to some about their using it and complained to the chief of police. Some of the pedestrians resented his interference with their passing through the yards, but they did not discontinue the practice.

Tom Tate testified: He was a policeman in Henryetta in March, 1917. He assumed his duties as policeman about ten days before the accident. He had warned people against going through the yards. He saw deceased on the night of March 25, 1917, before he was killed. That deceased was pretty drunk, had been drinking; he could smell it on his breath and he was staggering around. After relating his story, he was asked these questions by the court:

"Q. What time was it? A. Between 11 and 12, as well as I remember, at night. Q. Was that on the same night that you learned later that he had been killed? A. Yes, sir."

The undisputed evidence of the railroad man, who found the body, and all others who handled the body that night, was that he was killed between 8:30 and 9 o'clock.

W. W. Melton testified: He was chief of police of Henryetta on March 25, 1917. He had had trouble with people trespassing on the right of way and had removed children from the right of way. He further testified he saw J. A. Donahoo on the night he was killed. The deceased had been drinking and was drunk; he could smell Choctaw beer on him, and he told him to go home. He saw

him some time after that when he was dead. On cross-examination witness Melton testified as follows:

"Q. What time on the 25th did you first see this man? A. As well as I remember, it was between 9:30 and 10:00 o'clock. Q. And the last time was some half hour after? A. Yes, sir. Q. Before you saw him dead did you see him take any drink of any kind? A. I did not. Q. Had that been the first time you were ever close enough to talk with him? A. I had talked to him before, but did not know him. Did not know his name was Donahoo, but knew his face. Q. How long have you known that trail up there through the yards.? A. Do you mean the tracks? Q. Yes. A. About five and a half years. Q. Where this man's body was lying, was that on the left side of the main line? A. As well as I remember, it was the main line. Q. Now, is it a fact that all the people living in the east and north part of town coming down to the foot of Main street, if they don't come through that yard? A. Yes, they do. Q. How long have the people been using that right of way for a footpath from the northeast part of town? A. Very nearly since I knew anything about the town. When I first knew anything about the town there were not many people who came that way."

The plaintiff in error contends that under this evidence the court should have instructed the jury to return a verdict in favor of plaintiff in error, defendant below. We do not agree with this contention. We think the evidence was sufficient to take the case to the jury. Plaintiff in error then cites a number of cases in support of its contentions. We quote from plaintiff in error's brief as follows:

"The first assignment of error which we desire to discuss is the error of the court in overruling the motion for a directed verdict. The exact question involved in this case, so far as we have been able to find, has not been before this court for determination. There are certain elements involved in this case which distinguish it from all other cases heretofore decided. The case of Wilhelm v. Missouri, Oklahoma & Gulf Railway Company, reported in 52 Okla. 317 (152 Pac. 1088), was the first case decided by this court in which the question of the duty of a railroad to licensees was considered. This opinion was written by Mr. Commissioner Brett, and the facts briefly stated are: That one S. T. Wilhelm was run over by cars on the tracks of the defendant railway and killed in the town of Kenefick, Oklahoma. The deceased at the time of his death was walking along a sidetrack on defendant's right of way which had been used by the public since the building of the railroad and the public use had been open and notorious; that a path had been made where the deceased met his death. While the deceased was walking between the rails on this particular track, the defendant kicked seven cars on to the sidetrack which the deceased was walking on, which cars ran over and killed the deceased. The main point decided in the Wilhelm Case is, that when the right of way of a railroad company has been used by the public for a number of years as a pathway without objection upon the part of the railroad company, it then becomes a question of fact as to whether or not the railroad company had acquiesced in such use. Upon this point the court said: 'Besides, it is a general rule of law that, where the facts are such, whether disputed or undisputed, that different minds may honestly draw different conclusions from them, the case is one that should go to a jury. There was undisputed evidence in this case that this track had been used for a number of years by the public as a pathway without objection, and it was a question of fact for the jury to determine under all the evidence whether or not the railroad company had acquiesced in such use.' It would seem from the foregoing statement of the court that there was no contention upon the part of the defendant that the officers of the M., O. & G. Ry. Co. had ever protested against the use that was being made of its track by the public. This feature of the case clearly distinguishes the Wilhelm Case from the case at bar, and for that reason alone the rule therein announced is not controlling in the instant case. We do not feel that the court will be inclined to extend the rule announced in the Wilhelm Case further than the facts in that case warrant."

Counsel for plaintiff in error seek to limit the scope of this authority to the question of whether or not the company had acquiesced in the use of its railroad tracks for the public. The second and third paragraphs of the syllabus in the case of Wilhelm v. M., O. & G. Ry. Co., supra, were not quoted by plaintiff in error. It announces this rule:

"The rule as stated in A., T. & S. F. R. Co. v. Cogswell, 23 Okla. 181, 99 Pac. 923, 20 L. R. A. (N. S.) 837, to the effect that a railroad company is liable only for willful and wanton injuries which may be inflicted upon a licensee, is not followed. But it is held that, regardless of the fact that the person injured was a bare licensee upon the track of the railroad company, the company is bound to exercise that degree of care and watchfulness to protect human life that is commensurate with the probability that persons may be upon its track at any given point. And whether or not that has been done, under proper instructions, is a question for the jury.

"Where a railroad company makes a flying switch, in a vicinity where the employes know or should know there are likely to be human beings upon the track, with no brakeman on the cars to control them or to keep a lookout for pedestrians, held, that such conduct is gross negligence."

We again quote from the brief of plaintiff in error:

"The next case in which this question was considered by this court is that of St. Louis & San Francisco Railroad Company v. Hodge, 53 Okla. 427 (157 Pac. 60). This opinion was written by Judge Sharp and discloses that careful consideration which characterizes all of his opinions. Edgar E. Hodge was a boy 12 years of age, who resided at Snyder, Okla. Near the town of Snyder, Okla., the defendant maintained and operated a coal chute for a long time prior to the injury sustained by Edgar E. Hodge."

Plaintiff in error then draws its own conclusions in regard to the Hodge Case, seeking to show that this decision was based upon the sole question that the railroad company permitted the use without objection. We fully agree with counsel that this opinion written by Judge Sharp discloses that careful consideration which characterizes all of his opinions. Paragraphs 5 and 6 of the syllabus of this opinion read:

"That children on some occasions had been warned not to take coal or play about the premises of the company did not absolve the company from its duty to exercise reasonable care in operating its trains in the yards, where it was shown that the former custom had not been discontinued.

"The proximate cause of an injury is ordinarily for the jury, and is to be determined as a question of fact, in view of the circumstances of fact attending it."

Under this authority it was proper to deny the motion of plaintiff in error for a directed verdict.

Plaintiff in error next cites Chicago, R. I. & P. R. Co. et al. v. Austin, 63 Okla. 169, 163 Pac. 517, and then quotes excerpts from the opinion. The 9th paragraph of the syllabus in this case reads as follows:

"Nor does the fact that the railway company had placed signs along its right of way warning the public against trespassing thereon absolve it from the duty imposed by the custom of the public which had ripened into a license where it appears that the custom had continued unabated after the placing of the signs."

These are the only Oklahoma cases cited by counsel for plaintiff in error. Cases from other states have been cited, which we have carefully examined, but we have invariably found distinguishing features in the cases which distinguish them from the case at bar. Denver & R. G. R. Co. v. Buffehr (Colo.) 69 Pac. 582. Here the distinguishing feature is disclosed in paragraph 5 of the syllabus, which states the facts as follows:

"Plaintiff stepped on a railroad track at a point 600 feet from a station at which a train was standing; testifying that she looked in both directions, but saw no train, though the view was entirely unobstructed. She walked between the rails in the same direction in which the train was going, with an umbrella over her shoulder, and did not look around after going on the track. The train started from the station on an up grade, necessarily making noise. Held, that plaintiff was guilty of contributory negligence as matter of law."

We do not consider that any good purpose will be served by pointing out the distinguishing features in each and every case cited by plaintiff in error. We think the opinion written by Rainey, J., in the case of M., K. & T. R. Co. v. Wolf, 76 Okla. 195, 184 Pac. 765, is decisive of this question raised in the instant case. The above case is cited with approval in a very able opinion by Johnson, J., in the case of St. Louis & San Francisco R. Co. v. Jones, 78 Okla. 204, 190 Pac. 385, which plaintiff in error evidently overlooked in preparing its brief. See St. Louis & San Francisco R. Co. v. Irene Teel, No. 10024 (decided by this court April 12, 1921), 82 Okla. 31, 198 Pac. 78.

In Anderson v. Great Northern R. Co., 15 Idaho, 513, 99 Pac. 91, we quote from the syllabus:

"A railroad company is bound to exercise a higher degree of care and watchfulness for the detection of trespassers on its track and the prevention of injury to them at points upon its track where people may be expected on the track, or where the roadbed is used constantly by pedestrians, than it is required to observe with reference to trespassers generally or at other places and under different circumstances."

In Palmer v. Oregon Short Line R. Co., 34 Utah, 466, 98 Pac. 689, we quote from the syllabus:

"A railway track need not be used so extensively by the public and for so long a time as to establish an implied license before the company may be required to keep a reasonable lookout for the persons on the track, such duty depending upon the place and the surrounding circumstances, but the use must be such as to apprise the company that the track is being used by a considerable number of persons with some regularity.

"In an action for injury to a person on a railroad track at a point frequently used by the public, where no implied license exists, it is a jury question whether the company has exercised ordinary care.

"Where, in an action against a railway company for injury to a trespasser on a track, the character of the place where the accident occurred is in dispute, or the evidence is conflicting as to the number of people who used the track and the character of the use, the company's negligence is a jury question.

"A railroad company must use ordinary care not to injure persons on or near tracks in thickly settled parts of cities, towns, and villages, where persons have free access to the tracks, and at all other places where the public in considerable numbers habitually have passed over or along the track for considerable time so as to impart notice of their use of the track to the company, or where the company expressly or impliedly permits such passage."

The undisputed evidence shows that a large number of people had been using these railroad yards as a passageway; that this practice had continued unabated for many years. The railroad company had made at least spasmodic objections to this use of its yards by the public, in some instances by suggesting to some one person that it was dangerous to use the yards as a pathway. They had brought a man from Sapulpa on one occasion to lecture at the schoolhouse and distribute literature. The evidence on this was hearsay, and there is no testimony that he did actually deliver a lecture at the schoolhouse, or what he lectured on if such lecture was delivered. It requires a more determined effort on the part of the railroad company to stop the public from using a right of way where such use has been continued for a long time and by a large number of people than it would require to prevent its use in the first instance.

It appears that the company had signs up at one time notifying the public that this was private property, to keep off, but at least one of these signs had been torn down by the company prior to the time of this accident, and had not been replaced. It was uncertain whether the other sign was up or not. This may have been considered by the public as an abandonment of its protest against the use of its yards as a passageway. Under the evidence it was proper to submit to the jury the question whether or not the railroad company permitted or acquiesced in allowing the public to travel across its right of way and tracks. It was submitted under the following instructions:

"No. 12. If you believe from the evidence in this case that the defendant company did not permit or acquiesce in allowing the public to travel its right of way or tracks at the point where it is alleged that the deceased was killed, and that the defendant used reasonable means to keep the public from traveling the right of way and track at said point where it is alleged the deceased was killed, then you are instructed that no duty devolved upon defendant's employes in the operation of its trains, cars, and switch engines upon its tracks and in its yards at Henryetta, Oklahoma, until they actually discover a trespasser, and then the only duty devolving upon them is to exercise ordinary care after the presence of the trespasser is discovered to prevent injuring him, and if you find from the evidence herein that the defendant's employes in charge of the switch engine and trains in its yards at Henryetta at the time and place said J. A. Donahoo is alleged to have been injured and killed did not at any time discover the presence of the said J. A. Donahoo, and were not aware of the fact that he was in said yard or about the track where it is alleged he was injured, then in that event it would be your duty to return a verdict for the defendant herein."

The plaintiff in error excepted to this instruction, but abandoned its objections, as it did not refer to it in its brief.

If the railroad company permitted or acquiesced in allowing the public to use its right of way and yards and its agents, servants, and employes knew that people were in the habit of using the yards as a footpath or passageway at all times of the day and night, it owed to the deceased that degree of care, in switching its cars, which would be commensurate with the danger to which persons would be exposed who might be using its yards as a pathway and whose presence might reasonably be anticipated, considering the number of persons traveling through the yards.

Plaintiff in error next complains of instruction No. 6, which is as follows:

"If you find from a preponderance of the evidence that at the time of the alleged killing of the deceased, J. A. Donahoo, by the defendant, and long prior thereto, that the defendant had permitted or acquiesced in allowing the public to travel along its right of way and track at the point where it is alleged that the deceased was killed, then it was the duty of the defendant company while operating its engines and cars through its agents and employes along said tracks and right of way at said point to keep a reasonable look-out for persons who might be traveling along said track and right of way."

We think this instruction is fully supported by the opinion in Missouri, K. & T. Ry. Co. v. Wolf, supra, and St. Louis & S. F. R. Co. v. Jones, supra.

Plaintiff in error next contends the court erred in giving instruction No. 16, which is as follows:

"If you find for the plaintiffs in this case, then in assessing the damages which plaintiffs are entitled to recover, the jury should assess the same with reference to the pecuniary loss sustained by the children of the deceased, and in determining this you may consider the probable earnings of the deceased, his age, experience, habits, health, and bodily qualifications, during what would

probably have been his lifetime, if he had not been killed, so far as these matters have been shown by the evidence; but the amount you allow cannot exceed the sum mentioned in the plaintiffs' petition."

This instruction is quoted almost verbatim from an instruction approved in a carefully reasoned opinion by Kane, J., in Missouri, K. & T. R. Co. v. West, 38 Okla. 581, 134 Pac. 655; the only difference being that in the West Case, supra, the widow's right to recover was considered in the instructions as well as the rights of the children. Plaintiff in error insists that the instruction should have limited the liability of plaintiff in error to the sum which the children might reasonably expect to receive from the deceased from the date of the accident until they arrived at their majority. It complains that the measure of damage which the court gave to the jury under this instruction is that which would be applicable for the widow or administrator in an action by either of them for damages; that neither of the plaintiffs had any legal right to expect any contribution from the deceased after he or she reached majority. The sections of the statutes (Revised Laws of Oklahoma, 1910) applicable to this case are as follows:

"Section 5281. When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased.

"Section 5282. In all cases where the residence of the party whose death has been caused as set forth in the preceding section. is at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow. or where there is no widow, by the next of kin of such deceased."

In this case no personal representative had been appointed, and the widow having died before the action was brought, section 5282. supra, gave the children as next of kin the right to maintain this action. The death of the widow did not limit the liability of the railway company, for under section 5281. supra, the damages must inure to the exclusive benefit of the children and be distributed in the same manner as personal property of the deceased. Therefore, there was no error in giving the instruction complained of.

The last contention of the plaintiff in error is that the absence of a lookout was not the proximate cause of the injury and death, for this reason:

"The uncontroverted testimony in this case discloses that if Mr. Donahoo was killed by either one of the cars composing the 16 cars that were kicked down the main line, he was killed by either the seventh or eighth car. The only evidence in this respect is the fact that blood and hair were discovered on the wheels of the seventh and eighth cars. It is not contended by the plaintiffs in this case that the deceased met his death by being struck by the north car that was kicked down the main line. What effect would a lookout have had if he had been stationed on the rear end of the sixteenth car switched on the main line by the railroad employe?"

The plaintiff in error then advanced the theory that deceased was drunk and fell between the seventh and eighth cars, and in support of this theory makes this statement in its brief:

"The undisputed facts in this case disclosed that the deceased was in a drunken condition just prior to the time that he met his death."

Plaintiff in error bases this statement on the testimony of Tom Tate and W. W. Melton. This assumption is not borne out by the evidence. He was killed between 8:30 and 9 o'clock on the night of March 25, 1917. Tom Tate testified he saw him in a drunken condition between 11 o'clock and midnight on the night of March 25, 1917, at least two hours after he was killed. W. W. Melton testified he saw him in a drunken condition between 9:30 and 10 o'clock on the night he was killed, at least one hour after he had met his death. This evidence was disputed by all of the witnesses who testified as to the time of his death.

The theory of defendants in error is that deceased was walking north on the track on which the cut of 16 cars was switched; that deceased was not aware of the approaching cars; that they did not make much noise, and there being no one on the north end to warn him; he was struck by the north end car, knocked down just outside the rail, and stunned; that while in this condition, six or seven cars passed the point where deceased was lying; that when deceased began to recover consciousness and while yet in a semiconscious condition, he made a move which resulted in his right arm and head being placed over the rail and the next car wheels that came along crushed deceased, causing the injuries which resulted in his death.

The jury had the evidence and these different theories before them; they also had

the opportunity of observing the demeanor of the witnesses on the stand. This court has held, if there is any evidence reasonably tending to support the verdict, the judgment will not be set aside on appeal. Pool et al. v. Burger Brothers, 56 Okla.268, 155 Pac. 1144; Oaks v. Samples, 57 Okla. 660, 157 Pac. 739; Futoransky v. Pope, 57 Okla. 755, 157 Pac. 905.

We do not find that any of the assignments of error or contentions of the plaintiff in° error are well founded or that any prejudicial error was committed by the trial court. This brings us to the request of defendants in error to enter judgment on the supersedeas bond filed by plaintiff in error, which bond is copied in the case-made, and, omitting the caption and filing dates on the back, reads as follows:

"Supersedeas Bond.

"Know All Men by These Presents:

"That St. Louis-San Francisco Railway Company, a corporation, principal, obligor, and United States Fidelity & Guaranty Company, of Baltimore, Maryland, as surety, are held and firmly bound unto Roy Donahoo, Forest Donahoo, Carliss Donahoo, Vera Donahoo and Albert Donahoo, by their guardian and next friend, M. C. Burrell, plaintiffs in the above-entitled cause, in the sum of twenty thousand five hundred and no-00ths ($20,-000.00) dollars, for the payment of which well and truly to be made, we, and each of us, do hereby jointly and severally bind ourselves, our successors and assigns, dated this 3rd day of July, 1919.

"The conditions of this obligation are such: That whereas, on the 30th day of April, 1919, judgment was rendered in favor of said obligees, Roy Donahoo, Forest Donahoo, Carliss Donahoo, Vera Donahoo and Albert Donahoo, by their guardian and next friend, M. C. Burrell, plaintiffs in said cause, and against said obligor, St. Louis-San Francisco Railway Company, defendant in said cause, for the sum of ten thousand dollars ($10,-000.00) dollars and cost; and, whereas, said defendant has taken an appeal from said judgment to the Supreme Court of the State of Oklahoma;

"Now, therefore, if the said principal obligor herein shall pay to the said obligees the condemnation money and cost, in case said judgment shall be affirmed in whole or in part, then this obligation shall be void; otherwise to remain in full force and effect.
"(Seal)      St. Louis-San Francisco Railway Company,

"By R. A. Kleinschmidt, Its Attorney.
"United States Fidelity and Guaranty Company,

"(Seal)      By Ed. M. Semans, Its Attorney in Fact.

"I approve this bond on the 5th day of July, 1919.

"E. M. Washington,
"(Seal) Court Clerk, Hughes Co., Okla."

Defendants in error have called this to the attention of the court in their brief as provided for in rule No. 11 of this court and asked that judgment be rendered accordingly.

It is therefore further ordered, adjudged, and decreed by this court that the plaintiffs have and recover of and from the United States Fidelity & Guaranty Company, a corporation of Baltimore, Maryland, as surety for the St. Louis-San Francisco Railway Company, a corporation, the sum of $10,000, together with interest at the rate of six per cent. per annum from the 2nd day of May, 1919, and all costs accrued in this action.

This cause is remanded to the district court of Hughes county with instructions to enter the foregoing judgment of record against the United States Fidelity & Guaranty Company, a corporation of Baltimore, Maryland, as surety. The judgment of the trial court is affirmed.

HARRISON, C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.