LOWDEN et al. v. FRIDDLE.

No. 29964. Sept. 30, 1941.

*117 P. 2d 533.*

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, all of Oklahoma City, for plaintiff in error.

Wells & Spurr, of Seminole, for defendant in error.

BAYLESS, J. Frank O. Lowden et al., Trustees of the Estate of the Chicago, Rock Island, & Pacific Railway Company, appeal from a judgment of the superior court of Seminole county, based on the verdict of a jury, in favor of Iza Friddle. Iza Friddle, as plaintiff, representing herself and children, the survivors of Garrett Friddle, deceased, brought an action against appellants, hereafter called company, to recover damages for the alleged wrongful death of deceased, alleged to have been caused by the negligence of company.

Friddle was found dead beside the tracks of company within the city limits of Seminole. From the record the following is known: Friddle left the home of Pinion, in the east end of Seminole (whether north or south of the tracks is not shown) somewhere around 9 or 9:30 p.m., to proceed to his home, stated to be about one mile west of company's depot and a "little north of the tracks." His avowed purpose was to go home. There is evidence that he sometimes went to company's tracks or right of way in the vicinity of the depot and proceeded thence west along the tracks and right of way until he desired to leave them to turn north to his home. There is an abundance of evidence that the public continuously and notoriously used the company's tracks and right of way at the depot and west of there to walk upon and along and to cross over. Somewhere between 10 and 11 o'clock p.m., his body was found lying partly inside and partly outside the rails of the main line of track, mangled as though passed over by a train. It is also shown that a fast, through freight passed through Seminole headed west

about 9:48 p.m. There was no eyewitness to the incident. The engine crew testified they did not see anyone upon or near the tracks, except the depot agent and a man and woman; and the depot agent testified that other than a man and woman standing on the depot platform, he saw no one else. He testified that when he heard the train blow its whistle as it approached from the east, he turned on the depot lights, and stood by the tracks to receive a paper message from the conductor on the rear end of the train. There is evidence that the depot platform is of concrete and extends a short distance west of the depot; that it is wider than a chat walkway that begins at that point and extends west several hundred feet, its width varying from 20 to 4 feet. The evidence is that the place where the first portions of Friddle's body were found (from which it is sought to infer that there is where Friddle was first struck) is put at 25 feet west of the west end of the depot. At about 42 or 46 steps west of the west end of the depot was found more evidence of a body being mangled, and from there to a point several hundred feet west, where the body was found, was found at intervals other evidence of a human body being dragged. There was evidence pro and con as to whether the whistle and bell of the engine were blown and rung as the train passed through the town. The speed of the train was placed at anywhere from 18 to 40 miles per hour; that is, the estimates of the witnesses varied to that extent, but there is no showing that the speed of the train was slackened or increased in passing through the town.

From this the plaintiff states that it is a reasonable inference, one that justifies submitting the issues to the jury, (1) that Friddle was walking on the tracks, or perhaps along the side of the tracks; (2) that the train came upon him from behind and struck him either a direct blow (if he was walking in the rails) or a glancing blow (if walking alongside the tracks); (3) that the company failed to give Friddle warning of the approach of the train by

blowing the whistle or ringing the bell; or that it was traveling at too great a rate of speed, considering that Friddle and others of the public were licensees and likely to be using the tracks and right of way, a fact known to company; and his death was caused thereby. It may safely be said that, while company denies all of plaintiff's evidence that tends to show that it failed in its duty toward Friddle, whether he be considered a licensee or trespasser, it offered no evidence reasonably tending to establish any other theory of how he came to his death. Company argues that there is not sufficient evidence to show that he was a licensee rather than a trespasser, or that it was guilty of negligence, or to connect its alleged negligence as the cause of Friddle being killed by the train.

We think the evidence that the public continuously and notoriously used the depot platform, the chat walkway, and the tracks for pedestrian uses is conclusive. Company endeavored to elicit from witnesses the fact that the public did not use the tracks when they were where the platform or chat walkway could be used, but were not successful in this. It seems that the use of company's property by the public was indiscriminate and not necessarily governed by preference for platforms or walks instead of tracks. We must take as virtually conclusively established that Friddle was a licensee.

In this view of the matter, company's argument is that there is no evidence of negligence on its part, and even if the evidence tending to establish negligence on its part is sufficient to support a finding to that effect, nevertheless there is no proof of a causal connection.

On the other hand, plaintiff insists that there is proof of negligence on the part of company to support a finding of negligence, and that the other inferences to be drawn from the surrounding circumstances are sufficient to support a finding upon its theory that Friddle would not have come to his death but for the negligence of company. Plaintiff cites and relies upon St. Louis-S. F. R. Co. v. Donahoo, 82 Okla. 44, 198 P. 81, wherein it is said:

". . . but the undisputed evidence shows that freight cars being operated and moved by the railway company ran over the deceased and caused his death, the railway company may present to the jury its theory of how the accident occurred, but the plaintiffs in the action have the same right to present to the jury their theory of the accident. Where both of the theories so advanced are not so absurd or unreasonable as to make them almost impossible, the jury are at liberty to adopt whichever theory seems to them to be most reasonable under the evidence, . . ."

—to support her theory that the evidence in this record is sufficient to require the submission to the jury of the issue of fact whether deceased came to his death as the result of the acts of negligence charged to company. Her theory is that where no eyewitness evidence is available, the jury may take all of the evidence of the surrounding circumstances and reach any reasonable conclusion therefrom they desire.

The language above quoted tends to support her theory. It was applied to the action from which it was taken, and there is a reasonable similarity in fact situation between the facts in that case and the one we are deciding to justify the position she takes.

It is clear to us, however, that the rule of law stated in that language is in conflict with the decisions of this court prior to 82 Oklahoma and since. It ignores the element of causal connection which is an essential to the establishment of liability on the part of the company. It is not enough simply to show that a defendant was guilty of an act of negligence and that at the same relative time plaintiff received an injury from defendant. There must be some evidence upon which can be placed the responsibility of the act of negligence for the injury. Evidence might show an act of negligence and an injury to be connected, or it might show them wholly unconnected, or it might merely be silent, which would require resort to

conjecture as to the relation between the two.

In our discussion of this matter we are assuming that the evidence is sufficient to establish Friddle's status as a licensee, if he was walking on or by the tracks; and we are also assuming that the evidence is sufficient to establish that the company was guilty of two acts of negligence: (1) in running the train through Seminole at an excessive rate of speed, and (2) that it failed to sound the whistle or bell of the engine. But, when we have assumed these factors, we are confronted with a complete absence of evidence as to where Friddle was or how he came to be mangled by the train.

He could have been walking between the rails of the track, or he could have been walking alongside the track as suggested by plaintiff. But, on the other hand, he could have been riding on the train, or could have attempted to board the train on the opposite side from the station, or any number of circumstances of a reasonable nature could have existed that would permit the happening of the death of Friddle under the wheels of the train.

The inference that Friddle was exercising due care from the instinct of self-preservation does not suffice to support an additional inference of causal connection. J. Ray Arnold Lumber Co. v. Carter, 91 Fla. 548, 108 S. 815, involved the death of a man by being run down by a logging train that was backing into camp. There was no eyewitness. The plaintiff's evidence supported the theory there was no warning light or lookout on the leading car of the train, and it was argued that this negligent omission caused the man's death. The court said:

"The presumption that the deceased, in the absence of evidence to the contrary, was exercising due care and caution for his own safety because of the general instinct of self-preservation, . . . will not alone suffice to meet the burden of proving defendant's negligence or circumstances from which such negligence could properly be inferred."

We construe this to mean, the inference of due care will not alone support an inference that negligence of defendant caused the death.

It is to be observed from a reading of the cases cited by the parties and those found in our research on this matter that cases where there are no eyewitnesses would present a state of circumstances that would nearly always present a jury question. In this case, the complete absence of eyewitness evidence removes the issue of last clear chance, and other issues that sometimes are properly submitted to juries.

In this case, the plaintiff seeks to have permission to have the jury say Friddle came to his death by being mangled by the train, the company was guilty of certain acts of negligence in operating the train through Seminole, and, therefore, the negligence in the operation of the train "may have" caused Friddle's death. We may be able to substitute "must" for "may" in the preceding paragraph, but in order to do so, the contingency that the negligent operation of the train caused Friddle's death must rise beyond possibility, that is, one of several possible explanations, and reach the degree of probability.

As pointed out by this court in Gypsy Oil Co. v. Ginn, 152 Okla. 30, 3 P. 2d 714, in discussing inferences of negligence and causal connection, an inference of negligence or causal connection must be based on something more than mere speculation or conjecture, that it is not sufficient to show a state of circumstances consistent with or indicating a mere possibility and to leave other possibilities of equal force and reason. The theory to be adopted must be the more probable and more reasonable to be adopted from the evidence. The theory cannot itself furnish the element that is missing in the evidence. The theory must be applied to evidence.

The more recent holdings of this court have been consistent in stating and applying the rule that a plaintiff who seeks to recover damages from a defendant

for an injury must show (1) that the defendant was negligent, and (2) that there is a causal connection between the negligence of defendant and the injury of the plaintiff. Lowden v. Van Meter, 181 Okla. 210, 73 P. 2d 424; Kurn v. Cochran, 181 Okla. 205, 73 P. 2d 433; Chicago, R. I. & P. R. Co. v. Smith, 160 Okla. 287, 16 P. 2d 226; Gypsy Oil Co. v. Ginn, supra, and other cases.

Insofar as the language of St. Louis-S. F. R. Co. v. Donahoo, supra, stands for the rule that conflicting theories of the cause of death, in instances such as were involved in that case or in this case, may be submitted to juries without the evidence meeting the two essentials above stated, it is incorrect. The parties are certainly to be permitted to introduce any evidence they offer competent to the issues, but it is the duty of the trial judge to say whether the plaintiff's evidence is sufficient to justify submitting to the jury in the light of the two essentials.

In our consideration of this case, we have considered the decisions of other courts, and we find no difference of views in the cases studied. See J. Ray Arnold Lbr. Co. v. Carter, supra; Georgia, etc., R. Co. v. Cox, 75 Fla. 714, 79 S. 276 (where a state statute determined the burden of proof); Bagdad Land & Lbr. Co. v. Boyette, 104 Fla. 699, 140 S. 798; Whiteaker v. Missouri Pac. Ry. Co. (Mo. App.) 15 S. W. 2d 952; Texas & N. O. Ry. Co. v. Zarate (Tex. Civ. App.) 74 S. W. 2d 721; Am. Dig. (West.), Railroads, Key No. 396 (1); and 34 Neg. Comp. Cas. Ann. 85, and accompanying annotation.

The judgment is reversed and the cause is remanded for a new trial.

WELCH, C. J., CORN, V. C. J., and OSBORN and GIBSON, JJ., concur. RILEY, HURST, DAVISON, and AR-NOLD, JJ., dissent.