KANSAS, OKLAHOMA & GULF RY. CO. v. WICKLIFFE.

No. 33129.     Nov. 9, 1948.

Rehearing Denied Feb. 1, 1949.

*202 P. 2d 423.*

Chas. P. Gotwals and James D. Gibson, both of Muskogee, for plaintiff in error.

Robt. W. Gibbs, of Tulsa, and W. E. Foltz, of Muskogee, for defendant in error.

CORN, J. Plaintiff brought this action in the district court of Pontotoc county on behalf of herself and minor children, to recover damages for the wrongful death of Charles Wickliffe, her husband and father of her children, alleged to have resulted from defendant's negligent operation of its freight train on April 23, 1943. The pleadings and evidence fairly establish the following facts:

At the time of his death deceased, a resident of Kenwood, Mayes county, Oklahoma, was 39 years of age. He was employed at a government plant at Choteau and earning approximately $135 per month, with which he supported his family. The location of his employment necessitated his staying in Salina, returning to his family on week ends. Approximately two and one-half miles south of Salina, a small town of some 800-1,000 population located in a sparsely settled region, defendant's railroad runs straight north for about one mile. Within this particular mile of straight track there are two private crossings, one-fourth of a mile or more apart, maintained by defendant since the railroad was built. South of Salina, flowing from east to west, Saline creek intersects both the highway and defendant's railroad. During flood periods the highway may become impassable, but it is always possible to reach Salina by walking the railroad bridge and track.

Plaintiff alleged the particular area of track between the two crossings above mentioned was reached by a well-defined path from the hills to the east known as the "Indian Trails", which was used by inhabitants of this region in gaining access to defendant's right of way, in order to walk the railroad track to and from Salina, this being the shortest route. It was further alleged that this route had been used long and continuously by inhabitants of the region with defendant's knowledge and implied consent, and that because of this deceased was a licensee upon defendant's track at the time of his death.

The afternoon of the tragedy a heavy rain and electrical storm was in progress. Deceased came through a gate opening onto the right of way near the Tramel home, which was adjacent to the track on the east. He was carrying a paper sack and made inquiry concerning other residents of the neighborhood and, after comment concerning the storm, walked on east. About an hour later he returned by the Tramel home still carrying the sack, spoke briefly to a member of the household, and then started walking north along the track, shielding his face from the rain with his left arm. Members of the Tramel family who talked with and observed deceased testified that he did not appear to be intoxicated.

Shortly thereafter defendant's train passed traveling north. The whistle was blown just before it reached the Tramel property and it was observed that blinds were down over the engine windows to keep out the heavily falling rain which was accompanied by a severe electrical storm, and very heavy, dark clouds. About 15 minutes after the train had passed it ceased raining and the Tramel's son started north along the track. A quarter of a mile or more north of the point where deceased was last seen walking, he discovered deceased's mutilated body upon the track.

Negligence was charged in that deceased was a licensee upon defendant's

track at the time of his death and that there was a failure to sound the whistle or ring the bell when the train was approaching him from the rear; that there was a failure to keep a proper lookout and that the windows of the engine cab were closed, making it difficult to maintain a proper lookout; and that defendant was further negligent in coasting the train quietly down grade and killing deceased. Issues were joined upon the pleadings and the case tried to a jury. Demurrer to plaintiff's evidence was overruled and, at the conclusion of the defendant's evidence, the jury returned a verdict for plaintiff for $10,000.

The assignments of error relied upon for reversal of the judgment are presented under nine propositions. Inasmuch as we are of the opinion that the matters hereafter mentioned are determinative of the appeal, we deem it unnecessary to consider other arguments offered by the parties.

Plaintiff's case is bottomed upon the proposition that because of frequent, continued use of the track by pedestrians in the locality, deceased was a licensee upon the track, and therefore defendant owed him a higher duty as concerned his safety while upon the track. It was alleged that many people lived east of the track in the area between the southernmost crossing and the town of Salina, and that the custom had been established of using the railroad as a public highway and that this use had been constant, frequent and excessive. The tragedy occurred at about mile post 83, between two and three miles south of the town. It is this portion of defendant's track that plaintiff particularly sought to establish had been long and continuously used by inhabitants of the region in traveling to and from Salina.

It is unnecessary to narrate the testimony offered by plaintiff to establish this fact. In behalf of plaintiff six witnesses testified from their own knowledge concerning use of defendant's track as a walkway for pedestrians. This testimony as to extent of such use varied from the use of the track by one person per day to an average of six or eight, and that at times sizeable groups would be walking the track at the same time. There was further testimony to the effect that defendant had never complained of such use and had never forbidden use of the track to people there.

Defendant's evidence was directed toward showing the alleged continuous use of the track in this area was only an occasional, intermittent use of the track which ran through a thinly populated, rural region; that the bridge over Saline creek had no walkway for pedestrians, and railroad employees testified that people were very seldom seen upon the track in this particular area.

We are of the opinion that it is unnecessary to consider whether deceased was a licensee upon defendant's track at the time he met his death. Admitting for the purpose of argument that plaintiff's evidence was sufficient to establish that deceased was a licensee upon defendant's track at the time he was run over, the further question arises as to whether there was sufficient evidence, either direct or circumstantial, tending to make it appear more probable that his death resulted in whole or in part from defendant's negligence than from any other cause.

Plaintiff contends the evidence was sufficient to establish a prima facie case of primary negligence and that the case was properly submitted to the jury for determination. Supporting this argument plaintiff cites and relies upon cases from this court which define the measure of a railroad's duty to a licensee upon its track. Chicago, R. I. & P. Railway Co. v. McCleary, 175 Okla. 347, 53 P. 2d 555. Plaintiff then points out that negligence may be established by circumstantial evidence, and urges that when plaintiff established a set of circumstances, relative

to breach of duty owed by defendant and injury resulting from a breach of such duty, as to cause reasonable men to differ on the issue of whether defendant exercised proper care, then the questions of primary negligence and proximate cause were for the jury. Citing Kurn et al. v. Jones, 187 Okla. 94, 101 P. 2d 242.

Concerning this feature of the case defendant points out there was no evidence deceased was walking on the track in time to have been seen by defendant's employees when keeping a proper lookout. Thus it is defendant's theory that, although when last seen deceased was walking along the track shortly before the train passed the Tramel farm, there was no witness to the accident and absolutely no evidence tending to show he was discovered in a perilous position in time for defendant's employees to have avoided running over him.

The testimony established deceased was last seen walking north on the track during a heavy rain and electrical storm, shielding his eyes from the rain and carrying a paper sack. After the accident two beer bottles were found near his mutilated body. There was further testimony as to his reputation for drinking and that he was drunk the morning of the accident. Members of the Tramel family, last to see him alive, testified he appeared sober when he was in their yard.

Testimony of the train crew was that due to extreme storm conditions visibility was limited in the vicinity of mile post 83 where Wickliffe was killed. The engineer testified he did not blow the whistle or ring the bell except a mile or more south of mile post 83; on a clear day he could have seen a man walking along this track, but on this particular day he could not have seen a man walking 300 feet away. He further testified to keeping a lookout at all times, but the visibility was very poor; however, he did see an object on the track about 200 feet in front of the train, but it looked like something blowing on the track and did not look like or have the appearance of a man, although he kept more of a lookout that day because of the storm. There was no testimony tending to show a failure to keep a proper lookout.

In this kind of a situation the matter resolves itself into consideration of two theories: (1) whether deceased was walking upon the track at the time and run down and killed as a result of negligence on the part of defendant's employees; (2) whether he might have been lying upon the track in a position of peril but the engineer failed to discover him there.

There was no evidence to show deceased was walking upon the track when killed. This must be inferred from testimony which showed that he started walking north along the track and later was found dead upon the track. Taking these two circumstances as sufficient to establish that he was walking along the track when killed, there is no other testimony tending to show positive evidence of negligence, or of a state of facts from which negligence reasonably could be inferred. If it is inferred from the fact of his body having been found upon the track, that deceased was walking on the track when killed, it is necessary to make the further inference that defendant's employees were negligent in failing to see him and use care required by the circumstances. From this it is necessary to go one step further and, upon the previous inferences, base the inference that such negligence was the proximate cause of his death. Such reasoning, if necessary, must be based solely upon speculation, which is wholly insufficient to provide the foundation for a finding of negligence in such cases. Chicago, R. I. & P. Ry. Co. v. Smith, 160 Okla. 287, 16 P. 2d 226; Lowden et al. v. Van Meter, 181 Okla. 210, 73 P. 2d 424. Missouri Pacific Ry. Co. et al. v. Gordon, 186 Okla. 424, 98 P. 2d 39. The fact that an injury has occurred carries with it no presumption

of negligence, but the existence of negligence is an affirmative fact to be established by the injured party. Kurn et al. v. Cochran, 181 Okla. 205, 73 P. 2d 433; Lowden et al. v. Friddle, 189 Okla. 415, 117 P. 2d 533; Kurn et al. v. Casey, 193 Okla. 192, 141 P. 2d 1001.

We think the following statement of this court in the Cochran case, supra, particularly applicable under the record now before us.

"A very studied consideration of the record fails to disclose that there was any negligence established as the proximate cause of the accident—or any causal relation between the neglect to properly operate the train and the death of the deceased. This might have been proved by direct evidence, but there was none. It might have been proved, as any other fact may be proved, by indirect or circumstantial evidence from which the fact of the proximate cause could be inferred, but these circumstances must be proved, they cannot be presumed. Any or all negligence charged against the defendants here must be inferred, and we refuse to declare a rule of law deduced only from inferences based upon other inferences, when such inferences cease to be the result of probabilities established by testimony, and become inferences based upon speculation or mere possibilities."

The second theory under which this action might be considered is that deceased might have been lying upon the track in a position of peril and the defendant's employees were negligent in failing to use the degree of care commensurate with the circumstances to avoid running over and killing him. Any assumption as to deceased's position upon the track, or the reason for his being in such position is, at best, conjectural. The sack carried by deceased was found near the scene. Two quart beer bottles, one broken and the other with the neck broken but still containing beer, were sitting on the end of a railroad tie. Some 10 or 12 burned matches were also near this tie.

Still assuming that deceased was a licensee in the beginning, it is conclusive that no license to sit or lie upon the track had been granted by defendant, since his only right was to use the privileges granted by the license. Thus, if deceased was sitting or lying upon the track he was a trespasser and the only duty which devolved upon defendant was not to wantonly or willfully injure him. Atchison T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P. 2d 908.

We have considered a similar question in Lowden et al. v. Van Meter, supra, and in Missouri Pacific Ry. Co. v. Gordon, supra. In the latter case we discussed at some length the matter of injury to a person who might have been lying upon the track in a position of peril. Therein it was pointed out that the rule is settled that where trainmen discover an inanimate object upon the track, not discernible as a human being, no duty rests upon the trainmen to stop or lessen the speed of the train unless the circumstances are such as to lead a reasonably prudent man to believe the object is a human being. The reason given for the rule in most of the cases is that to require the railroads to anticipate the presence of trespassers at any and all points along their line and to keep trains under such control as to be able to stop to prevent accidents virtually would destroy their usefulness as common carriers.

In the present case there was no evidence the deceased was seen upon the track. The engineer testified that he saw something blowing upon the track, but that it did not have the appearance of a human being. Even if it be assumed that this object was the deceased, sitting or lying upon the track, he was a trespasser and under the rule above mentioned, defendant's engineer was not required to assume that the object he saw was a human being and stop the train.

Such tragedies are most regrettable. The burden which falls upon the aged, poor and weak who are left alone from the loss is even more regrettable.

Tragic though this unfortunate happening was, we decline to declare a rule of law to fit the circumstances which would necessarily be based upon conjecture and speculation.

We are of the opinion the plaintiff's evidence was insufficient to establish primary negligence, or that defendant's negligence was the proximate cause of the injury, and it was error to overrule defendant's demurrer to plaintiff's evidence.

The judgment of the trial court accordingly is reversed and the cause remanded, with directions to dismiss the same.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, GIBSON, and LUTTRELL, JJ., concur.