Maedean CAIN, for herself, and as natural guardian and next best friend of her minor children, Connie Sue Cain, Jessie Jo Cain and David Wayne Cain, Plaintiffs in Error,

v.

ST. LOUIS–SAN FRANCISCO RAILROAD COMPANY, a foreign corporation, Morgan Edward Odom and Audie B. Wolfe, Defendants in Error.

No. 36590.

Supreme Court of Oklahoma.

Nov. 1, 1955.

Rehearing Denied Jan. 10, 1956.

Application for Leave to File Second Petition for Rehearing Denied Feb. 4, 1956.

Dickey, Terry & Richard, Tulsa, Jack Sellers, Drumright, for plaintiffs in error.

Satterfield, Franklin & Harmon, Oklahoma City, James L. Homire, St. Louis, Mo., for defendants in error.

CORN, Justice.

This appeal resulted from an action brought to recover damages for alleged wrongful death of plaintiffs' decedent in a railroad crossing accident. The accident occurred at a point where West 21st street, also called Mideo Road, in Tulsa County, is crossed by the defendant railroad's spur track which serves industrial plants in the vicinity. Shortly before 4 A.M. on the morning of June 17, 1953, one of defendant's diesel switch engines was pushing two flat cars and a box car along the spur track, preparatory to "spotting" the box car at an industrial plant located south of West 21st street. In order to accomplish this it was necessary to open gates giving entrance to the plant property. The train was brought to a stop with the box car blocking the crossing while a trainman (defendant Odom) went to open the gates in order to permit entrance of the box car onto plant property. An automobile, owned and operated by one Casteel, and in which Ralph Joe Cain, husband and father of plaintiffs, was a passenger, was traveling west at a high rate of speed. The automobile struck the box car upon the crossing and plaintiffs' decedent was killed instantly.

After alleging the factual matters surrounding the accident the petition charged defendant, and the employees as party defendants, with negligence in operating the train without lights; failure to give warning of the train's approach to the crossing; failure to maintain a lookout and in backing the train upon the crossing without warning; failure to have signalman at crossing to warn motorists; negligence of switchman in leaving the crossing and going upon private property to open the gates, instead of staying at crossing to warn motorists; negligence in permitting view of crossing to become obscured by vegetation, and also by obstacles located east of crossing which blocked view of train from that direction. The petition sought damages for pecuniary loss, support and maintenance resulting from the death. A demurrer was sustained as to a second cause of action based upon a claim for funeral expenses.

Defendants denied the existence of negligence, and affirmatively alleged negligence of the driver as the proximate cause of the accident, and decedent's contributory negligence; and, that the driver was decedent's agent, or that the parties were engaged in a joint mission. Defendant also interposed the defense of unavoidable casualty.

The issues were completed by plaintiffs' reply which denied all matters asserted in defense, and made verified denial of the existence of agency, or that the parties were upon a joint mission.

The evidence at the trial disclosed the train, consisting of a box car, two flat cars and the engine, approached the crossing from the north. The switchman, the defendant Odom, "flagged" the crossing and then signaled the engineer, the defendant Wolfe, to proceed. The train then moved south to a point where the box car completely blocked the crossing and was stopped by the switchman's signal, in order that he might open two large gates leading into the plant where the box car was to be "spotted", or placed. Having opened the gates Odom returned · to the engineer's side (west side between the gate and box car) of the train and signaled for the train to be moved. However, at that moment he also discovered the automobile some 200 yards to the east of the crossing and approaching at a high rate of speed. He thereupon signaled the engineer to stop and ran toward the pavement swinging his lantern in an effort to warn the automobile. The train had been blocking the crossing approximately 2 minutes, and defendant testified some 30 seconds elapsed between discovery of the approaching automobile and the time of impact against the box car. Both defendants who were members of the train crew testified no warning signals were given by bell or whistle, and that there were no lights upon the box car. The en-

gineer testified there was a signal which could have been given to instruct him to sound the whistle, but he received no such signal. He also testified the brakes had been set and that the train was not moving at the time of the impact.

There was testimony by a retired railroad engineer controverting defendants' evidence relative to existence of signals which could be given in order to instruct an engineer to sound warnings. This witness further testified that upon receiving a proper signal, acting under normal conditions, the train could have been reversed and the box car moved 20 feet within a very few seconds. The witness also testified as to what he considered proper methods involved in switching operations such as defendants carried on in this case. His testimony was of such a nature as to establish a conflict in the evidence relative to the propriety of defendants' operations.

The highway patrolman who investigated the accident testified concerning his observations tending to establish the speed of the automobile. He testified his observations established that a person in an automobile could ascertain the presence of a train upon the crossing in the nighttime at a distance of a half mile; approaching the crossing from the east with lights on low beam a standing box car could be seen from approximately 400 feet; with lights on high beam a standing box car could be seen at approximately 800 feet.

At the conclusion of plaintiffs' evidence the defendants interposed separate demurrers thereto, upon the ground that the evidence was insufficient to show actionable negligence. The trial court sustained defendants' demurrers, for the reason there had been no showing of primary negligence upon the part of any of the defendants, and dismissed plaintiffs' action.

To reverse the trial court's ruling and judgment plaintiffs present the various assignments of error under four propositions which are argued at length. Inasmuch as plaintiffs' entire argument is predicated upon the theory the evidence was such as to create a question which required determination by the jury, it is unnecessary to deal at length with the separate conten-

tions, prior decisions cited in support thereof, or various subdivisions of argument based upon what plaintiffs conceive to be numerous independent acts of negligence as reflected by the interpretations placed upon various phases of the evidence.

The real basis of plaintiffs' argument may be summarized as follows; in view of evidence showing defendants' failure to sound warning signals, and the conflicting testimony respecting matters relating to the accident and the handling of the train under the circumstances, and the absence of evidence to show plaintiffs' decedent, or the driver of the car actually saw the box car as they approached the crossing, the trial court erred in sustaining defendants' demurrers because the questions presented by the evidence presented questions of fact upon which reasonable men might differ.

In Kurn v. Jones, 187 Okl. 94, 101 P.2d 242, this court announced the rules applicable in instances such as herein considered. Paragraphs 1 and 2 of the syllabus in that case state:

"1. To charge railroad with negligence in leaving train at night across highway without lights or other signals to disclose its presence, motorist injured must show that trainmen, exercising reasonable care, should know that, because of darkness, cars were such obstruction that people traveling in automobiles properly equipped with lights and carefully operated at reasonable rate of speed would be likely to come into collision with them.

"2. Trainmen in the employ of a railroad company are not required to anticipate that a motorist driving along a highway and knowingly approaching a railroad crossing will drive his automobile in such manner as will not permit him to avoid collision with a freight car standing upon the crossing."

Since our decision in the Jones case, supra, these principles have been applied in the following cases: Lowden v. Bowles, 188 Okl. 35, 105 P.2d 1061; Thompson v. Carter, 192 Okl. 579, 137 P.2d 956; Fleming v. Loch, 200 Okl. 448, 195 P.2d 942;

Raley v. Thompson, 203 Okl. 633, 225 P.2d 171; Atchison, T. & S. F. Ry. Co. v. Templar, 204 Okl. 460, 230 P.2d 907.

The only qualification of the rules announced in the foregoing cases may be observed in Raley v. Thompson, supra; and in Chicago, R. I. & Pac. Ry. Co. v. Richerson, 185 Okl. 560, 94 P.2d 934. Both cases recognize the established rule that the presence of railroad cars upon a crossing provides notice to one operating a vehicle that the crossing is obstructed. However, the Raley case, supra, recognizes or permits a qualification of the established rule in that, in cases such as here considered, the railroad owes no additional duty to provide further warning (when a crossing is obstructed by a train) in the absence of unusual circumstances. The Richerson case, supra, does not support plaintiffs' position. The distinguishing element in that case is found in the fact the evidence was conflicting upon the question whether a train occupied the crossing at the time, or came upon the crossing so the motorist could not avoid collision.

Plaintiffs insist the evidence regarding defendants' failure to give warning signals, the absence of lights, the condition of the railway crossing signal (which the evidence showed to be leaning), the physical surroundings at the crossing, and the absence of evidence to show deceased or his driver ever saw the train, presented questions as to which men might have differed and, therefore, should have been submitted to the jury.

■ The same arguments have been urged heretofore in the cited cases. In the Templar case, supra, the motorist's lack of knowledge of existence of the railroad crossing was held not to qualify the rule. And, in that case, the evidence was that the crossing sign was not clearly visible from a certain point, nearby lights tended to blind motorists approaching the crossing, and the highway curved as it approached the crossing. While once again applying our recognized rule we quoted from Thompson v. Carter, supra, wherein we pointed out that such evidentiary facts did not render the railroad crossing extra-hazardous. Review of our prior decisions will disclose that every argument urged by plaintiffs has been considered by this court heretofore.

Before the close of the case plaintiffs' counsel requested leave to amend the petition to conform to the proof in an effort to invoke the doctrine of last clear chance. The evidence was that, upon discovery of the approaching vehicle, defendant Odom recognized the attendant peril but failed to signal to the engineer to back the train from the crossing although (in his testimony he estimated that), 30 seconds elapsed between his discovery of the approaching vehicle and the time of impact. The additional evidence relied upon was elicited from plaintiffs' witness, a retired engineer. This witness testified there was a signal which could be given in order to direct backing of the train, and the matter of reversing the throttle would require only two or three seconds. The witness further testified:

"Q. Mr. Franklin, with the switching group consisting of the engine, two flat cars, and one box car, how long, in your opinion, from a signal to back up to engage the reverse gear and move that box car 20 feet? A. Well, it would be different conditions and if your engine was first grade, your rail dry and everything it wouldn't take but a very few seconds, and another thing would be according to what kind of a signal to move."

The above evidence provides the basis for the argument urged by plaintiffs in this connection.

■ We are of the opinion the foregoing was insufficient to present the question sought to be raised, and the trial court properly denied the request. Defendant was exercising a legal right when it blocked this crossing, and was not required to anticipate that decedent's driver would so operate his vehicle as to be unable to avoid collision. The doctrine sought to be invoked herein always must be based upon the existence of a perilous situation arising out of negligence of the defendant as well as the plaintiff.

Moreover, the evidence (above quoted) is insufficient to support the premise upon which plaintiffs' argument is based. Plaintiffs first point to defendant Odom's failure to signal the engineer to sound a warning. From this point plaintiffs proceed to add the testimony of their witness that the train could be reversed in a few (2–3) seconds. Then, to this, is added the testimony that the train, *under proper conditions and following the proper signal,* could have been reversed back in such manner as to clear the crossing within "a very few seconds". The failure of such evidence to establish the issue sought to be injected into the case is apparent.

In the past we have pointed out that, although tragedies such as this are most regrettable in view of the burdens falling upon those who survive, it is impossible to pronounce rules of law which alleviate the results of such events. See Kansas, Oklahoma & Gulf Ry. Co. **v.** Wickliffe, 201 Okl. 129, 202 P.2d 423.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, DAVISON, HALLEY, JACKSON, and HUNT, JJ., concur.